Esther Hilliard, Appellee, v. Woodmen of the World Life Insurance Society, a Fraternal Benefit Society Incorporated Under the Laws of the State of Nebraska, Appellant.

Term No. 4608.

578

Opinion filed February 27, 1947. Released for publication March 27, 1947.

E. E. Denison, of Marion, for appellant.

Leon A. Colp and D. L. Duty, both of Marion, for appellee.

Mr. Justice Smith delivered the opinion of the court.

The plaintiff appellee, Esther Hilliard, hereinafter referred to as the plaintiff, was awarded a verdict by a jury, and the court entered judgment in the amount of $1,123.35 against the defendant appellant, Woodmen of the World Life Insurance Society, hereinafter referred to as the defendant, upon a suit brought by her as the beneficiary under a certificate of insurance issued by the defendant to her husband, Joseph P. Hilliard.

The original complaint consisted of one count, which alleged the execution and delivery of a certificate of insurance for $1,000 to Joseph P. Hilliard on June 28, 1938 by the defendant; that the plaintiff was the beneficiary named; that Joseph P. Hilliard died July 24, 1943, while said insurance was in effect; that Joseph P. Hilliard and plaintiff had each performed all of the conditions of said certificate required of them, and that the defendant refused to pay the insurance or any part thereof.

The defendant filed an answer, denying that Joseph P. Hilliard had performed all of the conditions of said certificate, and set out wherein he had defaulted in his payment of dues for the month of June 1943.

Two further counts were filed by the plaintiff, and upon motion of the defendant, were stricken, and the plaintiff filed a second additional amended count, which alleged that the dues for the month of June 1943, were not paid as provided for in the contract of insurance, but were tendered to the defendant in the month of July 1943, and by it refused.

This count further alleged that for a period of four or five years prior to the death of Joseph P. Hilliard, the defendant established and followed a custom and course of dealings between its local camp at Marion, Illinois, and its members, including Joseph P. Hilliard, whereby it accepted payments of delinquent dues both before and after the last day of the calendar month in which the same were due, and that by reason of said custom and course of dealings, whereby it accepted payments of overdue monthly instalments of premiums that were already delinquent for a period of from two to three weeks to a month or two or more, the defendant waived thereby the provisions in the contract of insurance and its constitution, laws and by-laws of forfeiting and declaring null and void the certificate of insurance of Joseph P. Hilliard.

The count further alleged that by reason of this custom and course of dealing the insured, Joseph P. Hilliard, was led to believe and he did so believe that the defendant was not exercising its right of forfeiting his certificate of insurance because of his delinquency, and thereby the right it might otherwise have had to declare the contract of insurance forfeited was waived.

The defendant filed a motion to strike this count, which was overruled by the court.

The defendant then filed a motion for a bill of particulars, and later an amended answer and ten special defenses to the plaintiff's second additional amended count.

The plaintiff's motion to strike certain paragraphs of the amended answer and all of the special defenses was sustained by the court.

The evidence shows that the defendant was a fraternal benefit society, organized under the laws of Nebraska, and authorized to do business in the State of Illinois; that a certificate of insurance was issued to Joseph P. Hilliard, June 20, 1938, payable upon his death, if the certificate was in full force and effect, to the plaintiff, his wife; that the certificate and the constitution, laws and by-laws of the defendant required that monthly dues of $1.09 were due and payable on or before the first day of each calendar month; that the insured, Joseph P. Hilliard, failed to pay his dues for the month of June 1943, and his delinquency was reported by the financial secretary of the Marion Camp to the defendant home office, and that on July 19, 1943, the defendant home office mailed a letter to the insured, notifying him that he had been suspended as a member, and advising him of the steps he should take to be reinstated, provided he was then in good health.

The evidence further shows that the insured had taken ill and was hospitalized some time in July, and

that his wife, the plaintiff, made daily trips to the hospital; that the plaintiff received the letter from the home office of the defendant, notifying the insured that he had been suspended, but did not open it until after her husband's death on July 24, 1943.

It is admitted in the answers to the bill of particulars that no tender of the amount of the delinquent dues was made by the plaintiff to the secretary of the Marion Camp until after the death of the insured.

The evidence offered by the plaintiff, in an attempt to show that the defendant had followed a custom and course of dealing with the members of its Marion Camp and the insured, whereby it had accepted payments of delinquent dues and thus waived the provisions of its constitution, laws, and by-laws, shows that during the five years that the insured, Joseph P. Hilliard, had been a member of the defendant society, he had failed to pay his dues for the month of April 1941, on or before the last day of that month; that he was notified of his delinquency and suspension and was urged to pay his delinquent dues and to be reinstated into membership, which he did within 15 days after he became delinquent; that again in June 1942, he became delinquent by failing to pay his dues on or before the last day of June, but he paid this instalment July 11, 1942, and was thus automatically reinstated to membership.

The evidence further shows that there were two types of contracts issued by the defendant society in the Marion Camp, term policies, such as the insurance Hilliard held, and policies with an automatic loan provision, whereby any reserve built up in the policy was used to pay delinquent premiums; that most of the witnesses called stated that they had the latter type of policy, but there were a few instances where delinquent payments were accepted on a term policy such as was issued to Hilliard. One witness, who had been a member of the Marion Camp for 30 years, testi-

fied that his dues had been accepted after due date; another witness testified that she had paid dues on a certificate issued by the Marion Camp to her son and that she was a week or two late in the payment of his dues on four or five occasions. A former secretary of the Marion Camp testified that many members paid their dues during the 30 day grace period, but if they paid after it expired, they were suspended. Another witness who had a policy in the Marion Camp, which had a loan value, testified he had gotten in arrears on his policy two or three months, and then paid up the whole thing, and that when he previously had a term policy, he had gotten in arrears that far on it also. Another witness testified that he had a policy which was not like the insured's policy, but he had paid on it five or six days after the last day of the month.

The financial secretary of the Marion Camp testified he had accepted dues on a term certificate such as the insured, Hilliard, had as much as three months after due date, provided member was in good health; the financial secretary of the Marion Camp, from 1938 to 1940, testified that it was the custom, while he was secretary, to accept dues at any time during the month and up to the fifth of the following month, and that the longest time he had accepted dues after the due date from a member was one month, unless he had knowledge or a statement of good health from the member paying.

The evidence further shows that the financial secretary of the local camp went to the funeral home the night of Mr. Hilliard's death and there spoke to the plaintiff, and asked her why she had not paid the dues on the certificate of insurance. Her reply was that she was bothered by her husband's illness and that they had just overlooked it.

The evidence further shows that the certificate of insurance upon which this suit is brought provides

that if the dues are not paid to the financial secretary of his camp, as required by the constitution, laws and by-laws, the certificate shall be null and void, and that should the certificate become void for any cause, acceptance of any payment from or for a member, or other act by any camp officer, shall not operate as an estoppel or as a waiver of the terms of the contract.

The evidence further shows that members holding the current certificate are required to pay their monthly dues on or before the first day of the month or during a 30 day grace period, and if he fails to pay his dues before the last day of the calendar month, he thereby becomes delinquent, is suspended from membership rendering his certificate of insurance null and void; that if a member is thus suspended, pays his delinquent dues within 15 days after the last day of the month for which they are due, such payment must be accepted, and the member becomes thereby reinstated and his certificate is restored to full force and effect, and that if a member fails to pay his delinquent dues, within 15 days, and does pay them within 90 days from the last day of the month for which they are due, the member thereby becomes reinstated, provided he is then in good health and remains in good health for 30 days.

The evidence further shows that there were at the time of the death of the insured, Hilliard, one hundred and fifty-eight members of the Marion Camp, and only nine had term certificates, and the others had certificates providing for automatic loan provisions from which the society paid delinquent dues so long as there were sufficient automatic loan values credited on the certificate.

At the close of the plaintiff's evidence the court sustained defendant's motion for a peremptory instruction and instructed the jury to find the issues for the defendant under the original count, and at the close

of all of the evidence, the court refused a peremptory instruction for the defendant under the second additional amended count.

The jury found the issues for the plaintiff and judgment was entered by the court for the plaintiff. A motion by the defendant for judgment notwithstanding the verdict and his alternative motion for a new trial were both denied.

The sole issue in this case is whether or not the evidence shows that a usage and custom of accepting the dues after the time specified in the contract of insurance was established by the action of the local camp which caused the insured to rely upon it as a waiver of the provision providing for the suspension of members for nonpayment of dues. The plaintiff contends that the evidence clearly shows that a custom had been established by the Marion Camp whereby assessments were accepted after the date they were due, and that the suspension and forfeiture provisions of the certificate were thus waived; however, there is no evidence that dues were accepted contrary to the express provisions of the insurance contract and without invoking suspension and forfeiture. The evidence before the court fails to reveal a single instance in which suspension did not occur for failure to pay dues on time. There is evidence which shows that assessments were paid by certain members after they were due, but no evidence that they were accepted by the defendant society contrary to the express provision of the insurance contract, or that the secretary of the Marion Camp, by accepting said delinquent dues intended to waive forfeiture of the insurance contract for nonpayment of dues.

The evidence which relates to the two previous instances when the insured, Hilliard, failed to pay his dues on time, indicates that the defendant society acted in accordance with the terms of the insurance contract. The insured was notified of his delinquency and suspended and was reinstated, under the provi-

sions of the constitution, laws, and by-laws, by making his payment each time within 15 days of the last day of the month for which it was due.

The terms of the insurance contract are clearly established by the evidence, and apparently Hilliard knew the terms of his contract and demonstrated by his compliance with them. The fact that the plaintiff stated, after her husband's death, that she had not paid the assessment because she had been bothered with other things and just overlooked it shows that she knew such payments were necessary and that she was not under the impression that the necessity for payment on time would be waived by the defendant society.

In *Old Colony Life Ins. Co. v. Hickman,* 315 Ill. 304, at page 309, where a waiver was claimed, the court said:

"It is always a question of fact whether a feeling of security on the part of the insured is induced by the insurer. What facts will constitute a waiver of prompt payment of premium is a matter of law, but whether the facts exist in any given case, is a question of fact."

■ ■ Plaintiff relies on waiver of the provision of the constitution, laws and by-laws of defendant society, which provides for suspension and forfeiture of the certificate for nonpayment of dues. To constitute a waiver, it is essential that there is an existing right, benefit or advantage, knowledge, actual or constructive, of its existence, and an intention to relinquish it, and the burden of proof is upon the party claiming a waiver to prove that the one charged to have waived the right knew of the fact that entitled him to the right and the fact upon which he relies for such waiver. *Ferrero v. National Council Knights & Ladies of Security,* 309 Ill. 476.

■ The plaintiff has failed to establish that the defendant society, through its home office, or the Marion Camp, intended to relinquish its right to in-

sist upon the payment of dues as provided in the contract of insurance.

The plaintiff has relied, to a large extent, upon the decision of *Harris v. Sovereign Camp of the Woodmen of the World, Inc.*, 302 Ill. App. 310, in which the court held that any provision of the constitution or by-laws of the defendant association requiring automatic suspension of membership or forfeiture of insurance was waived, but the facts in this case differ materially from the case at bar. In the *Harris* case the secretary of the local camp had accepted his dues for the month of September 1930, on October 20, 1930, and Harris did not die until October 23, 1930; the court found uncontradicted evidence, which showed a custom on the part of the local lodge of receiving dues after due date without declaring a forfeiture of membership; there was a letter by the home office, addressed to Harris as "Esteemed Sovereign," requesting payment of his assessment, which was sent before the home office knew of his death. The local lodge held burial service for Harris; that the usual ritual ceremony of burial for a member in good standing was given and they passed a resolution for their records and for the family of the deceased which expressed regret of the death of the deceased, who was referred to in such resolution as "Our Esteemed Sovereign," and which recited he was a "loyal and enthusiastic Woodman, and served faithfully as a member." There were no such actions as these on the part of the defendant society or the Marion Camp in the instant case. The evidence shows that Hilliard, unlike Harris, was suspended from membership on this occasion and on two previous occasions; that there was a letter from the home office of the defendant to Hilliard but it was addressed to the insured as "Mr. Hilliard," not "Our Esteemed Sovereign"; that the dues for Hilliard were not tendered until after his death, and when tendered, were refused. While in the *Harris* case they were paid

three days before his death and accepted by the local camp; and also in the instant case, the Marion Camp took no action recognizing Hilliard as a member, such as conducting his burial service and typing resolutions concerning his death.

We are of the opinion that the verdict was against the manifest weight of the evidence, and that the trial court should have entered judgment for the defendant notwithstanding the verdict of the jury. The evidence taken as a whole does not tend to prove a custom of doing business with the insured which would amount in law to a waiver of any of the provisions of the certificate of insurance issued to the insured, or of the defendant's constitution, laws and by-laws.

The defendant assigns numerous other errors as a basis for reversal of the judgment entered in the trial court, but in view of the conclusions we have reached, it is unnecessary to discuss them.

The judgment of the trial court will be and the same is hereby reversed, and judgment for the defendant is entered in this court.

It is further ordered that the plaintiff pay the costs.

Judgment reversed and judgment for the defendant entered in this court.

*Judgment reversed.*

CULBERTSON and BARTLEY, JJ., concur.