Maryl Sniader, Plaintiff-Appellant, v. David Sniader, Defendant-Appellee.

Gen. No. 48,718.

First District, Third Division.

February 6, 1963.

Bernard M. Ashen & Joel M. Carlins, of Chicago, for appellant.

Miller, Leeds & Green and L. Louis Karton, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from an order, entered in a divorce suit three months after the decree of divorce, directing the plaintiff wife to execute papers which would enable the defendant husband to make loans on a certain policy of insurance in order to pay the premiums thereon. The principal issues involved are whether

the court could properly enter an order interpreting the provisions of the divorce decree and whether it was proper for the chancellor, in order to determine the meaning of the decree, to resort to notes made by him at a conference held with the parties prior to the entry of the decree.

The parties were divorced by decree entered June 5, 1961. The decree established the plaintiff wife as the owner of an insurance policy on the life of the husband in the sum of $50,000; barred the husband from any claim thereto, and ordered him to pay the "premiums required" for a period of about ten years. It appears that prior to the decree the parties entered into an agreement with respect to their property rights. The agreement provided that the husband would pay "all premiums due on said policy" for the ten year period. When the case was called for prove-up, Harry X. Cole appeared for plaintiff and Albert Green, of Miller, Leeds & Green, the same lawyers who represent defendant on this appeal, appeared for defendant. The policy on its face called for an annual premium of $1439. The wife testified that she was to have the ownership of the policy and that "he [the husband], has to pay *$14,630.13 premiums* on the policy for the next ten and one-sixth years." (Emphasis added.) No challenge of that statement was made by the husband's attorney. The decree was filed on the same day. Its provisions with respect to the property settlement were the same as those in the agreement, except that with respect to the payment of premiums the decree provided that defendant should pay "the *premiums required* on said policy," instead of "all premiums due."

On September 15, 1961, the husband filed a petition stating that the wife, as owner of the policy, had caused to be removed therefrom the Automatic Premium Loan clause. This clause would have permitted the

husband to make loans from year to year as premiums were required to be paid and would enable him to pay only an amount equal to the premium provided in the policy *less the full amount he could borrow thereon and less the dividends.* The petition further charged that in the course of the negotiations it had been fully explained to the wife that premiums were paid under that plan; that because plaintiff had caused the Automatic Premium Loan clause to be removed and had refused to execute the necessary loan agreement papers, he (defendant) had been compelled to pay the full gross premium of $1411. The petition prayed for an order compelling the wife to execute the loan agreement papers. An answer was filed by the wife, denying that the plan had been thus explained to her or that it had been explained to her that the policy would be continued to be paid on the basis of that plan, and asserting that she was the owner of the policy; that the right to make loans on the policy was an incident of ownership, and that the husband could not avail himself thereof.

The court set the matter down for hearing. After statements by counsel for the respective parties, the husband's attorney suggested to the court that if he would call in the attorney who had represented the wife in the divorce proceedings and settlement negotiations, he would substantiate the position of defendant's attorney that the wife had been told about the loan and told it was the husband's habit to borrow on the policy to pay premiums. The court thereupon adjourned the case until the following morning, when Mr. Cole, the former attorney, came into court. He said he did not recall anything about a loan against the policy; that the only reason the stipulation differed from the decree with respect to payment of premiums was that the husband's counsel had said his client sometimes used the *dividends* to pay a lesser

amount; that Cole had insisted that the decree set the premium at $1400 and some dollars, but that he finally compromised on the use of the word "required."

The court said there was an ambiguity in the decree; that he had the right therefore to go to his notes and decide what was the intention of the parties; and that at conferences held at 9:00 a. m. on May 22 and May 26, 1961 he had set down the figures in his notes. The notes were in the judge's handwriting and read "$50,-000—he pay $600 yr." Evidently the court being fully persuaded by these notes that this was the amount of the premium to be paid, entered an order directing the wife to execute the necessary loan agreement papers with the insurance company and to deliver them to the husband. It is from this order that the wife appeals.

■ We must first dispose of the husband's motion for dismissal of the appeal on the ground that this was not a final order. The order requires the wife to execute loan agreement papers and thereby substantially reduces the actual value of the policy which under the terms of the decree she owns. Thus it disposed of a controversy involving an amount of money or an interest in property. There was no other proceeding pending. If the wife is now denied an appeal, she will have no other opportunity to procure a review of the order. Cases relating to Section 50(2) of the Civil Practice Act (Ill Rev Stats c 110, § 50(2) (1961)), cited by the husband, are not applicable. We see no merit in the motion to dismiss, and it is denied.

■ ■ The first question which arises in connection with this proceeding is whether the court's notes, without having been formally put in evidence and without the court's testifying as to the circumstances under which they were taken, could become material. It is true they constitute a memorandum which could

have been used to refresh his recollection after laying the basis therefor or, in accordance with the general rule applicable, be put in evidence. No such effort was made and, indeed, being in effect the testimony of the judge who heard the matter, it would have been improper. Memoranda of a judge made in conferences held for the purpose of aiding litigants to adjust their differences are no part of formal legal procedure. They are not to be confused with the minutes a judge makes of orders, decrees or judgments which may become important as the basis for the correction of mistakes made by the clerk or parties. People v. City of Chicago, 363 Ill 409, 2 NE2d 330; McCord v. Briggs & Turivas, 338 Ill 158, 170 NE 320; Martinez v. Seymour, 348 Ill App 112, 108 NE2d 30; Clark v. Augustine, 342 Ill App 296, 96 NE2d 582.

But aside from this, the record shows that after the memoranda were made, there was at least one other conference between the attorneys with respect to the settlement of property rights. It was following this that the agreement was made which specifically required the husband to pay all premiums. As we have before stated, when the case came up for hearing on the divorce issue, plaintiff testified that her husband was to pay $14,630.13, the total of the premiums for ten years. This was in the presence of defendant's attorney and was not opposed by him. The trial court's notes do not reflect the agreement as *finally* reached.

It also appears that the court was not clear on the position taken by the husband because in the discussion following his decision, he said that the defendant "is not allowed to borrow from now on." What defendant contends for is the right to avail himself of a plan by which he can continuously borrow to pay premiums over the ten year period, thus substantially reducing the value of the policy and defeating the explicit provisions of the agreement. Such a construction is not

389

warranted on the basis of the change in the words "all premiums due" as used in the agreement to "premiums required" as used in the decree.

The decree was O. K.'d by both parties. It is the wife's contention that it was a consent decree and therefore is to be construed according to the law controlling the construction of contracts. Certainly, insofar as it relates to distribution of property, the decree was based on agreement. Assuming, however, that it was not a consent decree, it still would not be subject to change after thirty days from the entry thereof, except under Section 72 of the Civil Practice Act, Ill Rev Stats, c 110, § 72 (1961). There are some extraordinary exceptions as, for instance, when courts have corrected obvious mistakes such as those with respect to the date a judgment was rendered or in the calculation of an amount due or in the names or descriptions of the parties, or an error in the description of land involved or an omitted description or a foreclosure sale under a superseded statute. Harris v. Schilling, 108 Ill App 116; Dillenburg v. Hellgren, 304 Ill App 51, 25 NE2d 890.

To support his case, the husband quotes extensively from the opinion in Stieler v. Stieler, 244 Minn 312, 70 NW2d 127. In that case a money settlement which was incorporated in the divorce decree was made between husband and wife. The husband died leaving United States government bonds registered in the names of both husband and wife. The court considered the divorce decree was ambiguous insofar as it related to the question of whether the property settlement terminated the wife's interest in the bonds and held that evidence could be heard thereon. That is entirely different from the situation involved in the instant case.

■ Were the words "premiums required" ambiguous? The premium is specifically stated on the first

page of the policy to be $1439. The Automatic Premium Loan clause in no way alters that, but merely provides that where the owner has so requested, a premium due may be paid:

(1) from any dividend deposits on the policy. . . . and

(2) by a loan against the policy . . . "provided the Loan Value is sufficient to secure such premium loan combined with any other indebtedness outstanding on this policy and interest thereon."

What is provided under this clause is a plan by which premiums may be paid by borrowing up to the full amount the policy allows. We are of the opinion that the provision of the decree, that the husband shall pay the "premiums required," cannot be stretched to include the right to make loans against it, which could in the end destroy all or a substantial part of the value of the policy.

■■ The right of the husband to reduce the premiums by applying the dividends thereon is quite a different question. Mr. Cole said he had agreed to the phrase "premiums required" because the husband said he sometimes used the dividends to reduce his premium payments. This is a reasonable interpretation. A dividend represents a share of the surplus apportioned by the directors of a company for distribution to policy holders and is commonly considered a reduction of premium. This does not appear to be disputed by the parties and is consistent with the use of the words "premiums required." Dividends on an insurance policy have been construed as a reduction of premium, rather than an ordinary dividend, by the Internal Revenue Service. 413 CCH 1941 Stand Fed Tax Rep, Par 6125.

The order is reversed and the cause is remanded with directions that an order be entered requiring the

husband to pay the premiums on the policy, but allowing him to apply only the dividends in reduction thereof.

Order reversed and cause remanded with directions.

DEMPSEY, P. J. and McCORMICK, J., concur.