THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WILLIAMS, Defendant-Appellant.

(No. 58275;

First District (5th Division)—January 18, 1974.

James J. Doherty, Public Defender, of Chicago (Leonard V. Solomon, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Barry R. Elden, and Robert Greenwald, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was found guilty of the offenses of burglary and robbery and sentenced to a term of four to nine years on each charge, to run concurrently.

Defendant and Gilbert Reese were originally charged in Indictment No. 71-2535 with burglary and robbery of the apartment and person of Estelle Knyzer, and in Indictment No. 71-2536 with the burglary and armed robbery of the dwelling and person of Ziggie Tamoliunas. Reese entered a plea of guilty to both indictments. In case No. 71-2535, after an evidentiary hearing, defendant's pretrial motion to suppress certain oral statements was granted following which, on the State's motion, the charges against defendant in No. 71-2535 were dismissed with leave to reinstate. Subsequently, during the trial of the case here, No. 71-2536, his motion to suppress oral statements, allegedly the same statements, was denied by the same trial judge.

On appeal defendant argues, (1) the court improperly denied his motion to suppress oral statements in case No. 71-2536, and (2) his sentences are in violation of the Unified Code of Corrections.

It is contended by defendant that the oral statements allowed here were the same statements suppressed in case No. 71-2535. There, Officer Zalas, Reese and defendant were the only persons who testified concerning the statements. The testimony of Officer Zalas, in pertinent part, was as follows:

"A. First I questioned the defendant Gilbert Reese.

Q. Where did you question Mr. Williams?

A. In the interrogation room.

*   *   *

Q. Was Mr. Reese in the room?

A. Yes, he was.

Q. You questioned them both together, is that right?

A. Yes, later I did.

Q. When you say 'later,' what do you mean, later on that afternoon?

A. At the time that Mr. Williams was brought into the room I had Gilbert Reese repeat a statement to me so Mr. Williams could confront the factual or 'infactual.'

Q. What did Mr. Williams say when he heard that statement.

A. I asked him if it was true or not.

Q. What did he say?

A. He said 'just what he said is what happened,' he said what Gilbert Reese said is what happened.

Q. He said yes it happened?

A. I don't remember his exact words but he agreed with the statement made by Gilbert Reese."

Reese testified that defendant was not with him when he stole the property and Reese was not asked, at this hearing, whether he made an oral statement implicating defendant. Defendant testified at the hearing that Reese made no statement in his presence which implicated him but he answered certain questions as follows:

"A. Well, he [police officer] told me when I came in and saw [sic] down that Gilbert Reese confessed to everything and said that I was with him.

Q. What did you say?

A. I just said—well, he started asking me questions I just said 'yes' to everything, he said 'yes' to everything.

Q. Why did you say 'yes' to everything?

A. Because I was afraid they would jump on me again.

\* \* \*

Q. So when you talked to the police officers the only thing you said to them was 'yes,' is that right?

A. Yes.

Q. They asked you—did they ask you did you do it?

A. He asked me was I involved, I just said 'yes.'

Q. They ask you if what Gilbert Reese said was true?

A. Yes.

Q. And that is all they asked you at that point?

A. From what I can remember.

\* \* \*

Q. Did Gilbert Reese make a statement of what had happened two nights before?

A. Well, I don't know about the statement.

Q. Well, did he say anything about what happened two nights before in your presence?

A. No, he didn't.

Q. Not at all?

A. No.

Q. Did Gilbert Reese sign something in your presence, specifically a complaint for a search warrant?

A. Yes.

Q. Did you sign a complaint for a search warrant at sometime in the station?

A. No, they told me I didn't have to.

Q. Did you sign it?

A. No."

Reese admitted at the hearing that he and defendant had signed an affidavit for a search warrant to recover property that had been stolen in the burglaries and that the affidavit stated, "we had stolen it, we knew where the property was." He stated, however, that this reference to defendant was a lie and that the affidavit was subsequently torn up and another prepared that only he signed which stated, "I stole the property." The trial judge granted the motion to suppress in case No. 71-2535 stating, among other things, "because actually all Mr. Williams said was that he agreed with Mr. Reese's written statement as to how the crime was committed" and because the oral statement "can be subject to interpretations."

During the trial of case No. 71-2536 Officer Zalas, Capt. Brani, Officer Czechowski, Reese and defendant testified at the suppression hearing. Zalas testified that Reese told him "he and the defendant James Williams robbed a place at 1410 South 49th Avenue, and the other place, 4832 West 15th Street. One belonged to Mrs. Knyzer and the other to Mrs. Tamoliunas." Zalas stated that this statement was repeated by Reese in the presence of defendant and that Zalas asked defendant "if this statement was correct and did he participate in what Gilbert Reese said, and he said yes, he did." Zalas further testified that he asked defendant if the statement was true and correct and that defendant answered "yes, the statement is correct." Zalas testified that Capt. Brani and Officer Czechowski were also present. Brani testified that he was in the room with Czechowski, Zalas, Reese and defendant when defendant admitted he was involved with Reese and both Reese and defendant told them where some of the stolen articles could be found. Defendant answered affirmatively to the question of Zalas whether the statement that Mr. Reese made was correct.

At this hearing Reese denied he had ever given an oral statement to the officers in the presence of defendant and that he did not at any time hear the defendant make any statement to the officers. On cross-examination he admitted that he and defendant signed the affidavit for a search warrant which stated that they had stolen the property. He then testified that at no time had he told the officers that defendant was with him when he committed the crime.

The motion to suppress was denied and the following people also testified at the trial: Ziggie Tamoliunas testified for the State that he was watching TV in his home when he was grabbed from behind by a man who forced him into a bedroom and put a cover over his head. A second man grabbed his mother and tied her on the bed. The men stayed in the home for 10 to 15 minutes, taking with them some foreign coins, a pocket knife, a man's ring and $2.50. He did not see the faces of either of the

persons. Julia Tamoliunas testified that she was in her home when a man entered and hit her with a baseball stick. Another man put a knife to her throat and told her to be quiet or he would kill her. She was tied up and put on a bed following which the men ransacked her house taking some money and items of personal property, including a pocket knife, a gold ring and some coins. She also was unable to identify the persons.

Ronald Uher, a Cicero police officer, testified for the State that he responded to a call at an address in Cicero where he observed two men on the front porch who fled, but who were subsequently apprehended a short distance away. He identified them as Reese and defendant, and his search of defendant revealed a number of foreign coins, a ball point pen, a Kennedy half-dollar and a ring. Some of these were subsequently identified by Ziggie and Julia Tamoliunas as items taken from their home. They also identified a pocket knife of Mr. Tamoliunas which was found on the person of Reese.

Officer Zalas was recalled and testified for the State that he interviewed Reese in the Cicero interrogation room on August 27, 1971, with Brani and Czechowski present and that, in the presence of defendant, Reese stated he had pulled two jobs with defendant, one at 1410 South 49th Avenue and the other at 4832 West 15th Street and when Zalas asked defendant if this statement by Reese was correct, defendant said it was.

Defendant testified that he did not commit the burglary or robbery at either address on August 25, 1971, and that the ring and foreign coins which were in his possession at the time of his arrest on August 26, 1971, had been given to him by Reese on the previous day.

OPINION

Defendant's first argument on appeal is that the trial judge improperly denied the motion to suppress oral statements when the same trial judge had previously granted the motion to suppress the same statements. He argues that the trial judge was bound by his previous ruling and that since the State did not appeal from that order it should not be allowed to use the suppressed evidence at a subsequent trial of the same defendant.

■■ He refers us to *People v. Taylor*, 50 Ill.2d 136, 277 N.E.2d 878, and *People ex rel. MacMillian v. Napoli*, 35 Ill.2d 80, 219 N.E.2d 489. They hold that where a defendant files a motion to suppress physical evidence under section 114—12(b) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 114—12(b)) at a preliminary hearing and an appeal is not taken from the granting of the motion, the State is barred from using that evidence at any subsequent trial. Those cases, however, are

based upon the wording of section 114—12(b) (motion to suppress evidence illegally seized) which provides:

"If the motion is granted the property shall be restored, unless otherwise subject to lawful detention, and *it shall not be admissible in evidence against the movant at any trial;* \* \* \*." (Emphasis ours.)

In the case at bar, defendant's motion was not to suppress evidence illegally seized, but rather, to suppress oral statements amounting to a confession which would be governed by section 114—11 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 114—11). There is no provision in that section barring the subsequent use of such statements in another trial and in the absence thereof, *Taylor* and *Napoli* are not controlling here.

Defendant also contends that the suppression order in case No. 71-2535, not having been appealed, was res judicata and barred the use of the same oral statements in the instant case. The res judicata doctrine is judicial in origin and makes a final valid judgment conclusive on the parties, and their privies as to all matters, fact and law, that were or should have been adjudicated in the proceeding. *Commissioner v. Sunnen*, 333 U.S. 591, 92 L.Ed. 898, 68 S.Ct. 715; 1B Moore's Federal Practice, sec. 0.405[1], page 624 (2d ed. 1965).

■■ It appears to be the rule, however, where a second proceeding between the same parties is upon a different cause of action, as it is in this cause, the principle of res judicata is applied much more narrowly. In this situation, the determination in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but only to those matters in issue or points controverted, upon the determination of which the finding or verdict is rendered (*Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195.) Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel. In this sense, res judicata, is more accurately referred to as collateral estoppel. (*Commissioner v. Sunnen, supra.*) Thus, although distinct in operation, the doctrines of res judicata and collateral estoppel have the common objective of judicial finality. The basic distinction appears to be that the application of res judicata necessitates an identity of persons and actions while collateral estoppel is invoked where the same parties are involved, but in different actions.

■■ Here, we are concerned with separate indictments involving the same parties and concerning similar charges, burglary and armed robbery, as against burglary and robbery, perpetrated against different victims at different locations. In view of the fact that the suppression order

in No. 71-2535 was an appealable order under Supreme Court Rule 604 (a) (*People v. Taylor, supra*) and because the order was not appealed, it was a final determination of the admissibility of the statements involved therein. Since collateral estoppel is applied in criminal cases (*United States v. Drevetzki* (N.D. Ill. 1972), 338 F.Supp. 403), the use of the same evidence would be barred in No. 71-2536, which involved the same parties, albeit separate indictments. See *Ashe v. Swenson*, 397 U.S. 436, 25 L.Ed.2d 469, 90 S.Ct. 1189, where it was held that the collateral estoppel doctrine means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

We turn now to the question of whether an issue of ultimate fact, raised and determined by a valid and final judgment in No. 71-2535, was litigated a second time in No. 71-2536. In this regard we note that the defendant contends the statements suppressed in the first proceeding were the same statements the same trial judge refused to suppress in the second case. The State argues that the statements were admissible in No. 71-2536, because the trial judge heard testimony from additional witnesses; and that the issue decided at the hearing in No. 71-2536 related to the Tamoliunas home invasion and was different from the issue decided in No. 71-2535 which concerned the Knyzer burglary.

It may be seen from the excerpts set forth in this opinion concerning the testimony on the motion to suppress in No. 71-2535 that the record does not contain the oral statement of Reese, which allegedly implicated the defendant, and to which the latter was supposed to have agreed. The record does disclose defendant testified that a police officer had told him "that Gilbert Reese had confessed to everything and said that I was with him" and that defendant stated he answered "yes to everything." However, what Reese had allegedly confessed to does not appear in the transcript. On the other hand, the record in No. 71-2536 discloses that Officer Zalas testified concerning the oral statement of Reese as follows:

"He told me how he and the defendant James Williams robbed a place at 1410 South 49th Avenue, and the other place, 4832 West 15th Street."

And when he asked defendant James Williams "if this statement was correct and did he participate in what Gilbert Reese said" that defendant answered "yes, he did."

The party invoking the collateral estoppel principle must show that the precise issue was raised and determined in the first action. (Restatement of Judgments, sec. 68, page 306 (1942).) The difficulty in applying the doctrine here, is in determining what statements were considered in the suppression order in No. 71-2535 and, inasmuch as the record

does not disclose the statements made, we are unable to ascertain the content of any such statements with any degree of certainty. In view thereof, we are of the opinion that there has been a failure to show that the precise issue was raised and determined in both cases.

■■ For the reasons stated, we believe that the trial court correctly refused to bar the use of the oral statements in the instant case.

■■ Defendant maintains also that his sentences of four to nine years for burglary and robbery are in violation of the Unified Code of Corrections. The Unified Code is applicable to cases pending on appeal as is the case here inasmuch as they have not yet reached the stage of final adjudication. (*People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1.) Under the Code, robbery and burglary are Class 2 felonies (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 18—1, par. 19—1). The maximum penalty for a Class 2 felony shall be any term of years in excess of one, not exceeding twenty, and the minimum term shall be one year unless the court, having regard for the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term "which shall not be greater than one-third of the maximum term set in that case by the court" (Ill. Rev. Stat., 1972 Supp., ch. 38, pars. 1005—8—1(b) (3), (c) (3)). In the case at bar, defendant's minimum sentence of four years on each charge is more than one-third of the maximum and each minimum sentence is therefore reduced to a term of three years.

Judgments of conviction are affirmed and the sentences are affirmed as modified.

Judgments affirmed, sentences affirmed as modified.

DRUCKER and LORENZ, JJ., concur.