WAYNE JOHNSON, Plaintiff-Appellee, *v.* KATHLEEN JOHNSON, a/k/a Kathleen Pacatte, Defendant-Appellant.

(No. 60333;

First District (2nd Division)—November 18, 1975.

Frana Biederman, of Chicago, for appellant.

Richard Rinella, of Rinella and Rinella, of Chicago, for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from two orders entered in a post-decree proceeding. In one, the trial court disposed of a petition for change of venue; in the other, it resolved a controversy concerning which parent was to have actual physical custody of two boys, the children of the former marriage. By the issues presented, we are asked to decide whether the court erred in denying the petition for change of venue and in ordering actual physical custody of the boys changed from their mother who lives in Blowing Rock, North Carolina, to their father who lives in Glenview, Illinois.

I.

In August 1972, a divorce suit which Wayne Johnson had filed against his wife, Kathleen, was before Judge Reuben J. Liffshin to be heard as a contested matter. The Johnsons were parents of two boys, Matthew and Andrew, then aged five and two, respectively. In an effort to help the parties reach agreement concerning the custody of their children, Judge Liffshin conducted a two-hour pretrial conference in his chambers. No record was kept of this conference. But as a result of it, the parties entered into a settlement agreement which included a provision that in the event a decree was granted, custody of the two boys was to be joint; but their residence was to be with the mother for 10 months of the year, subject to the father's rights of visitation. It was also agreed "[t]hat any post-decretal hearing relative to the minor children herein shall be submitted to Judge Liffshin, whether or not he is then assigned to the Divorce Division providing said Judge is agreeable to entertaining any such matters."

Wayne Johnson was granted a divorce on August 21, 1972, by a decree into which was merged the agreement he made with his wife. Less than a month later, Kathleen Johnson married Charles Baker Pacatte. Then, a month or so after that, she petitioned for leave to take Matthew and Andrew out of the State, but Judge Liffshin denied her request. Thereafter, she lived in Illinois; and the two boys, in accordance with the divorce decree, spent the agreed visitation periods with their father.

In June 1973, during the time for a summer vacation, Kathleen, her second husband and the two boys, drove a camper bus to Blowing Rock, North Carolina, where they visited her parents, Mr. and Mrs. James Hathaway, the owners of a resort restaurant and tavern called the Villa Marie. While they were there, Mathew and Andrew were returned to Illinois for the summer vacation visit with their father. At his election, however, the boys stayed for only three weeks and returned to Blowing Rock. In the meantime, Kathleen's parents offered her and her husband

employment in the Villa Marie restaurant by which each could earn approximately $200 per week, a gross earning that materially improved their economic condition. In addition, they were to have rent free, starting November 1, 1973, a four-bedroom home. They accepted the offer; and as a result, Kathleen decided to stay in North Carolina, a decision that led to a concern about getting authority to keep Matthew and Andrew with her.

She wrote to Judge Liffshin. He answered, saying that "[b]ased upon the statements contained in your letter and the affidavit enclosed therein, I am of the opinion this Court would permit the relief asked for. However, it is necessary for you to file a proper petition or have some attorney do it on your behalf so a proper order may be entered." Accordingly, Kathleen Pacatte obtained the services of North Carolina lawyers who prepared a petition asking that she be allowed to keep Matthew and Andrew with her in Blowing Rock. The original was sent to Judge Liffshin; a copy was served on counsel who represented Wayne Johnson. They filed an answer and a counterpetition asking the court to transfer physical custody of Matthew and Andrew to Wayne Johnson. On August 31, 1973, the parties were before Judge Liffshin. Kathleen Pacatte was present but the boys were not. The petition and counterpetition were continued for hearing to September 3 with a provision in the order that the boys be returned to Illinois on or before that date. This was not done; but nothing further occurred concerning the matter. The causes were continued again.

On September 13, 1973, with Kathleen Pacatte absent but represented by a lawyer with whom she had had a telephone conversation, the case was before Judge Liffshin. The lawyer told the court that, after looking into the matter, he decided he could not represent Kathleen Pacatte. Therefore, he asked for another continuance so she could consider his advice and obtain another lawyer. This suggestion met with agreement. However, before the continued date was agreed to, Judge Liffshin made the following statements:

"However, I am going to say this for the record and in your presence. I heard the case as a contest. Friedman, Donnelly, Armstrong and Connelly represented her, and Mr. Rinella's office represented Mr. Johnson. We had a two-hour pretrial conference in our chambers trying to arrive at some amiable agreement between the parties relative to the custody of the children, which was probably the one stumbling block in the whole proceeding.

Mr. Johnson refused to give up custody because of the evidence which they had, which they said they had which would prove Mrs. Johnson an unfit mother.

I heard both of the allegations and the refutals therefore, and I

think that the Court was convinced at that time prior to the entry of any Judgment based upon an agreed hearing that in a trial Mrs. Johnson would not get custody of these children if she were to request their leaving the jurisdiction. Based upon her promise to the Court that she would not leave the jurisdiction with the children and that they would be here so that Mr. Johnson would have visitation with them properly and guidance, I convinced Mr. Johnson to allow her to have the custody under a joint order.

There was also the question of a character named Pacatte with whom she was hob-nobbing at the time and wasn't married to, who was interfering in the marriage of the Johnsons, who had an unsavory reputation which was not denied by Mrs. Johnson in the hearing and in the pre-trial conference. And she went so far as to make the statement at that time that she had no intentions of marrying Pacatte, if I remember. She didn't tell the Court that she intended to leave the jurisdiction, but she did leave the jurisdiction with Pacatte and the children.

Pacatte, I think had a criminal record.

Am I correct, Mr. Johnson?

MR. JOHNSON: Yes sir.

THE COURT: It was not denied.

I thought that Pacatte wouldn't have been a good influence on these children.

I subsequently received a letter from Mrs. Pacatte under the Pacatte name with no mention of Johnson, asking me how to allow her to have the children live with her wherever she was. And I wrote back and answered her that the usual procedure was for some lawyer to present a petition and that normally would be granted as a matter of course based upon the fact that her husband, whom she represented that she had married, was living down there and had an opportunity to get into a business or work for her parents or his parents, I don't remember which one. Without realizing that Pacatte was Johnson, I wrote the letter.  *  *  *

Now, I will give you a chance to bring the people up here if they want to fight it out. But she violated her promise to the court. She induced this court to enter these orders upon the false premise well-knowing she intended never to keep that promise, and I am going to take the children away from her.  *  *  *

The court doesn't find any change of circumstances or that she is entitled to have these children down there, in violation of her

agreement to the Court which does not appear of record, however, but which the Court well remembers. * * *

That's why I put it in the record. She is playing pussy cat with the Court.

If she wants to have her true love, let her have her true love without the children."

The case was then continued; and on September 18, an order was entered setting the causes for hearing on September 24, 1973. On that day, Kathleen Pacatte was not present, nor was she represented by counsel. Judge Liffshin heard evidence and then entered an order which provided that "[t]he permanent physical custody, control and supervision of the two minor children of the parties is [sic] hereby awarded to the plaintiff Wayne Johnson."

Before the end of 30 days, Kathleen Pacatte filed a petition to vacate the order of September 24. On October 24, 1973, she, her present counsel, assisted by another lawyer, and Wayne Johnson with his counsel, appeared before Judge Liffshin. At that time, there was no petition on file accusing Kathleen Pacatte of contempt; no rule to show cause had been issued against her; no finding had been made that she had violated either a provision of the divorce decree or that of any court order. Her counsel, after an introductory statement for the record, said to the court, "We would like to present today, your Honor, a motion for change of venue." Judge Liffshin, replied, "The motion is denied. Take her into custody. Your motion is denied." When he was asked to read the petition because it alleged facts which showed judicial bias against Kathleen Pacatte, Judge Liffshin said: "I am biased. She made promises to me when I heard the case. I am still in it. I say she is in contempt of Court for violation of the orders which I entered, which she permitted to be entered by agreement, and she is in custody of the Sheriff. Take her into custody." This was done; and Kathleen Pacatte remained under arrest the remainder of the morning and part of the afternoon, a period of more than four hours.

During the early part of it, in an exchange between Judge Liffshin and the lawyers, Wayne Johnson's counsel told him that there was no contempt proceeding against Kathleen Pacatte: no petition had been filed against her, no rule had issued, no finding had been made that she had violated any order of the court or any provision of its decree. Thereupon, Judge Liffshin ordered that a petition to hold Kathleen Pacatte in contempt be prepared and filed. He announced that the sentence for contempt was to be 60 days in the county jail.

■■ The petition was filed at the beginning of the afternoon session; but

after a conference attended by the parties, their lawyers, and Judge Liffshin, an agreement was reached whereby Kathleen Pacatte was to turn over Matthew and Andrew to Wayne Johnson that day, a $5000 bond to secure her return to court was to be posted by her with Judge Liffshin, and the causes were to be continued to October 26. These things were done, including the continuance to October 26. The parties appeared with their counsel, and shortly after the case was called, Judge Liffshin announced that he was quashing all the proceedings to hold Kathleen Pacatte in contempt. He did so.[1] Then, he sustained her motion to vacate the order of September 24 which transferred physical custody of the boys to Wayne Johnson. Following this ruling, Kathleen Pacatte's counsel argued, but Judge Liffshin persisted in his denial of the petition for change of venue.

The petition and counterpetition concerning physical custody of the boys were continued to February 28, 1974. Judge Liffshin heard evidence, listened to arguments of counsel, and then found that Glenview, Illinois, where Wayne Johnson lived, afforded Matthew and Andrew better educational opportunities as well as more appropriate surroundings than those that could be given them by Kathleen Pacatte in Blowing Rock, North Carolina. He ruled it was in the boys' interest for them to reside with their father. Therefore, he transferred the physical custody of them from Kathleen Pacatte to Wayne Johnson. We turn to the issue whether Judge Liffshin erred in denying the petition for change of venue.

## II.

■■ In doing so, we notice that the divorce decree in this case did not prohibit the children of the parties being removed from Illinois during a summer vacation. In fact, the agreement that was incorporated into the decree expressly provided that the children could be taken out of the State on vacation, the only restriction being that the other parent be told

---

[1] Despite this disposition, Kathleen Pacatte contends that this incident deprived her of due process of law as guaranteed by our State and Federal constitutions. We agree with this contention. In fact, we find the entire episode offensive. In our judgment, no one should be treated in one of our courts as were Kathleen Pacatte and her lawyers in the courtroom of Judge Reuben J. Liffshin on the morning of October 24, 1973. Without process, notice or a finding that she had forfeited her right to personal liberty, she was taken into custody in the presence of her sons and her husband.

True, as shown by our statement of the facts, the proceedings were later quashed; but this was only after it was made clear to Judge Liffshin that what he had done lacked elementary procedural due process. Although the arguments of the parties may dictate otherwise, we choose to say no more about this matter except to express the hope that an incident of this kind will not occur again.

where they were going and how they could be reached. As to these decretal requirements, it is uncontradicted that in June 1973 Kathleen Pacatte took Matthew and Andrew to Blowing Rock, North Carolina, during the time of their summer vacation. She returned them to Wayne Johnson so he could spend his allotted portion of the summer with them. Then, as far as we can discern from the record, either he or someone he authorized took them back to their mother. Johnson testified that he visited Blowing Rock, went near but not in the Pacatte home, and visited the schools attended by his two sons. Obviously, he knew where they were. Therefore, the conclusion is inescapable that when Kathleen Pacatte took the two boys out of Illinois for a vacation visit with her parents in Blowing Rock, North Carolina, she did not violate any provision of the divorce decree.

Judge Liffshin, however, before any evidence was presented to him, stated that Kathleen Pacatte had violated an agreement with the court by which she promised that her two boys would not be taken out of the jurisdiction; that she made the promise without intending to keep it; that as a consquence, her former husband withheld using evidence which would have shown she was an unfit mother; that she was "hob-nobbing" with a character named Pacatte, a man with an unsavory reputation, a criminal record, a man she said she would not marry and who, the judge thought, would not be a good influence on the two boys; and that he was going to take the boys from her because he did not find any change of circumstance or that she was entitled to have the children with her in North Carolina. All of these facts came from Judge Liffshin's memory of a pretrial conference. And when, during argument of the change of venue petition, counsel objected to his consideration of matters that did not appear of record and could not be tested by cross-examination, Judge Liffshin said, "I considered them and I am denying your petitions * * *."

■■ Unquestionably, the facts Judge Liffshin considered affected the rights of parties before him. Unless they were judicially cognizable, they had to be proved. (*McGurn v. Brotman,* 25 Ill.App.2d 294, 167 N.E.2d 12.) This was true even though they were personally known to him, either as a court or as an individual. (*Abbott v. Abbott,* 129 Ill.App.2d 96, 262 N.E.2d 502; 29 Am. Jur. 2d *Evidence* § 15 (1967).) The right of a court to act on that which is known to it must be subordinate to those requirements of form and orderly communication which regulate the mode of bringing controversies into court, of starting and conducting them. (29 Am. Jur. 2d Evidence § 14 (1967).) These principles dictated our views in *Sniader v. Sniader,* 40 Ill.App.2d 384, 188 N.E.2d 255, where we held that even a judge's memoranda of conferences held to aid litigants in adjusting their differences are not a part of the procedure of the case.

(40 Ill.App.2d 384, 389.) Therefore, it was improper for Judge Liffshin to consider and reach conclusions from the personal knowledge he had of what had been said in the pretrial conference to which he referred. (*Van Donselaar v. Van Donselaar* (1958), 249 Iowa 504, 87 N.W.2d 311.) But more importantly, and relevant to Kathleen Pacatte's petition for change of venue, was the fact that what Judge Liffshin said displayed judicial bias. She alleged facts so showing and supported the allegations with affidavit. Therefore, if the petition was timely, in proper form, and in compliance with the venue statute, it had to be granted. (*Rosewood Corp. v. Transamerica Insurance Co.*, 57 Ill.2d 247, 311 N.E.2d 673.) Wayne Johnson, however, contends that the petition did not meet these requirements. And in support of this contention, he asserts two grounds.

First, he argues that his former wife waived her right to a change of venue in these proceedings because their settlement agreement provided that any post-decretal hearing concerning their children would be submitted to Judge Liffshin. Putting aside for the moment questions concerning legality and adequacy of consideration, we are of the view that the terms of such an agreement would have to be more specific than the ones called to our attention if, in the trial of a case, they are to waive the constitutional right to a fair and impartial judge. I would take an exceedingly well-drafted document to agree away the right to a fair trial, in advance of knowledge that the judge is prejudiced. See *Hilliard v. Woodmen of the World Life Insurance Society*, 330 Ill.App. 577, 71 N.E.2d 903; *Vermilion County Production Credit Association v. Izzard*, 111 Ill.App.2d 190, 249 N.E.2d 352; 92 C.J.S. *Waiver* 1041-69 (1955).

But even if these difficulties were overcome, we would have no hesitancy in concluding that the agreement in question is invalid because it contravenes the public policy of this State. (See *Foreman v. Holsman*, 10 Ill.2d 551, 141 N.E.2d 31.) The circuit court of Cook County is a multijudge, multidivisional court with a chief judge to whom our constitution entrusts general administrative authority, including the power to provide for division, general or specialized. (Ill. Const. (1970), art. 6, § 7(c).) Supreme Court Rule 21(b) provides that "[t]he chief judge of each circuit may enter general orders in the exercise of his general administrative authority, including orders providing for assignment of judges, general or specialized divisions, and times and places of holding court." (Ill. Rev. Stat. 1973, ch. 110A, par. 21(b).) Exercising this authority on April 30, 1965, the chief judge of the circuit court of Cook County issued General Order 15.3 governing divorce proceedings and directed that "[t]he post judgment motion judge shall hear all motions, petitions and applications made more than 30 days after entry of a judgment of divorce  *  *  *." Therefore, it appears that at the time with

which we are concerned the divorce division of the circuit court had a designated motion judge for post-decretal matters. In view of this fact, agreements by which litigants and their lawyers decide which judge will hear their post-decretal controversies infringe on the constitutional authority of the chief judge of the court involved. In our judgment, such agreements should not be given credence by judges. (See 20 Am.Jur.2d Courts § 141 (1965).) Nothing but mischief can result from them. Consequently, the settlement agreement between Wayne Johnson and his wife Kathleen did not waive her right to petition for a change of venue in this case.

Second, Wayne Johnson argues that Kathleen Pacatte's petition for change of venue was not timely, an argument which focuses attention on the chronology of the controversy. This shows that on October 26, 1973, after Judge Liffshin quashed the contempt proceedings and vacated the September 24 order, he allowed Kathleen Pacatte's petitions to vacate and for change of venue to stand as a new petition seeking modification of the provisions in the divorce decree that governed custody of the two boys.

■■■ Under the venue act,[2] a petition to modify child custody provisions of a divorce decree is a new suit or proceeding. (*Smith v. Smith,* 87 Ill.App.2d 21, 230 N.E.2d 474; *Gates v. Gates,* 38 Ill.App.2d 446, 187 N.E.2d 460; *McPike v. McPike,* 10 Ill.App. 332.) This being so, when Judge Liffshin allowed Kathleen Pacatte to file her second petition seeking the court's authority to keep the boys in North Carolina, a new case was before the court. Facts alleged in the new one differed from the first; thus, it was a different controversy, although the court had ruled earlier concerning the same relief. (Compare *Jingling v. Trtanj,* 99 Ill.App.2d 64, 241 N.E.2d 39.) Before this new suit was heard, and before it had been the subject of any ruling on the merits, Kathleen Pacatte's petition for change of venue was before Judge Liffshin. It was in writing; and it alleged personal bias by the judge, a fact he admitted in open court. It was verified, in proper form, and was presented in apt time. The provisions of the venue act are liberally construed in order to promote rather than defeat the right to a change of venue. (*Fennema v. Joyce,* 6 Ill.App.3d 108, 285 N.E.2d 156.) For all of these reasons, Judge Liffshin had no discretion in the matter; it was his duty to grant the relief requested.

---

[2] As it pertains to the case on appeal, the venue act provides that "[a] change of venue in any civil action may be had in the following situations: * * * (2) Where any party or his attorney fears that he will not receive a fair trial in the court in which the action is pending, because * * * the judge is prejudiced against him, or his attorney * * *. In any such situation the venue shall not be changed except upon application, as provided in this Act, or by consent of the parties." Ill. Rev. Stat. 1973, ch. 146, par. 1.

(*Rowlen v. Hermann,* 129 Ill.App.2d 45, 262 N.E.2d 739; see *Anderson v. City of Wheaton,* 25 Ill.App.3d 100, 323 N.E.2d 129.) And since he did not, we must conclude that he erred in denying Kathleen Pacatte's petition for change of venue. This being the case, the order that changed the physical custody of the boys cannot stand because rulings of a court after it erroneously denies a change of venue are void. (*Wheaton National Bank v. Aarvold,* 16 Ill.App.3d 193, 305 N.E.2d 541.) As a result, we need not decide whether Judge Liffshin also erred when he modified the custody provisions of the decree. We need only remand this cause for further proceedings which are consistent with the views we have expressed.

## III.

Ordinarily, this would conclude our opinion. However, in the hearing before Judge Liffshin, there arose three questions concerning the admission of evidence which may recur in such further proceedings as may be undertaken in this case. Therefore, we will answer them for the guidance of court and counsel.

The first is whether, in a post-decree proceedings, evidence is admissible to prove facts that existed prior to the divorce decree. In the hearing below, Wayne Johnson offered such evidence. Kathleen Pacatte objected on the ground that the decree in the case had adjudicated all controversies between her and Wayne Johnson, including the issues concerning custody of their children. Her objections were overruled. In this court, Wayne Johnson seeks to sustain those rulings by pointing to a paragraph of the divorce settlement agreement which provides that "* * * either the husband or the wife may offer such proof or proofs relative to the conduct of each other concerning the minor children as may be available to them in any post decretal hearings, including any evidence relating to the conduct of either party prior to the entry of the Decree for Divorce relating to the best interests, welfare and custody of the minor children * * *." He argues that as to the matter before the trial court, this provision prevented application of the doctrine of res judicata. ·

■■■ It is a general rule that a divorce decree is res judicata of facts existing at the time it is entered, but not of facts arising thereafter. (*Nye v. Nye,* 411 Ill. 408, 105 N.E.2d 300; *Golden v. Braunfeld,* 22 Ill.App.3d 344, 317 N.E.2d 336.) Res judicata is a doctrine of judicial origin. (See *People v. Williams,* 17 Ill.App.3d 285, 308 N.E.2d 39; 46 Am.Jur.2d *Judgments* § 395 (1969).) It reflects a public policy that requires an end to litigation after each party has had a full opportunity to present all the pertinent facts. (*Lytton v. Cole,* 54 Ill.App.2d 161, 203 N.E.2d 590; *Rose*

*v. Dolejs,* 7 Ill.App.2d 267, 129 N.E.2d 281.) Therefore, in the face of this doctrine, and the public policy it reflects, parties to litigation cannot by agreement select issues concerning which they will litigate interminably. We conclude, then, that the settlement agreement could not make admissible evidence which proved facts that existed at the time of the divorce decree.

■■ Of course, in every post-decretal proceeding in which the issue is custody of children, evidence which tends to prove change of circumstances may make relevant, and thus admissible, evidence proving facts which existed prior to the divorce. For example, the present condition of a home in which children of a divorced parent are living, the habits and conduct, including present criminal behavior of a second husband, may make admissible evidence showing facts which existed at the time the divorce was granted. (See *Maroney v. Maroney,* 109 Ill.App.2d 162, 249 N.E.2d 871; *Brady v. Brady,* 26 Ill.App.3d 131, 324 N.E.2d 645.) In such a case, the proponent of evidence which tends to prove facts existing before a divorce must lay the proper foundation for its admission by showing that the evidence is relevant and material. In the final analysis, it is relevancy and materiality that control admissibility of evidence; not agreement of the parties. Therefore, it is our opinion that in any further proceedings in this case, evidence of facts that existed prior to the divorce will not be admitted unless the proponent lays a foundation which shows it is relevant to the change of circumstances being urged to justify a change in the custody of the two boys.

■■ The second question is whether evidence consisting of information from an FBI record was admissible to prove that Charles Baker Pacatte had a criminal record. This kind of evidence was offered by Wayne Johnson who called a witness to testify that he examined a sheet from an official FBI record and learned that between March 1966 and November 1971, Pacatte was arrested for offenses ranging from drag racing without a license to theft, a charge to which he pled guilty and was put on one-year probation. All objections to this testimony were overruled.

This evidence was a plain and obvious violation of the rule against hearsay. (See 5 Wigmore, Evidence § 1361 (3d ed. 1940); McCormick, Evidence § 245 (2d ed. 1972); Cleary, Handbook of Illinois Evidence § 17.1 (2d ed. 1963).) It was testimony concerning a written out-of-court declaration offered as proof of what was asserted in the declaration; namely, that Pacatte had a criminal record. Thus, the testimony was hearsay and inadmissible. *Hansel v. Chicago Transit Authority,* 132 Ill.App.2d 402, 270 N.E.2d 553; *Goshey v. Dunlap,* 16 Ill.App.3d 29, 305 N.E.2d 648; compare *People v. Lewis,* 28 Ill.App.3d 777, 329 N.E.2d 390.

■■ This does not mean that evidence concerning the moral fitness of a divorced woman's second husband is not relevant to the issue whether she should continue to have custody of her children; common sense dictates otherwise. (See *Maroney v. Maroney*, 109 Ill.App.2d 162, 249 N.E.2d 871; *Serotzke v. Serotzke*, 335 Ill.App. 485, 82 N.E.2d 375; Annot., 43 A.L.R.2d 363, 370-383 (1955).) It means that if, in considering change of circumstances, the moral fitness of Kathleen Pacatte's second husband becomes relevant, there is a proper and legal way by which this proof can be made. See McCormick, Evidence § 186 (2d ed. 1972); 18 I.L.P. *Evidence* § 41 (1956).

■■ The final question is whether Kathleen Pacatte was entitled to have Judge Liffshin produce the original of the letter dated July 13, 1973, she had written to him from Blowing Rock, North Carolina. In the trial court, and for the purpose of proving what she said in her letter, she asked that it be produced. Her request was refused with Judge Liffshin ruling that the letter was confidential. When her counsel asked that a draft of the letter be admitted in evidence, Judge Liffshin sustained the objections to it. When counsel made an offer of proof concerning the contents of the letter, the offer was rejected.

In answering this somewhat odd question concerning the production and admissibility of evidence, our attention focuses on the fact that the letter in question was written by Kathleen Pacatte. By the rules that govern such matters, the contents of the letter belonged to her. (See *Baker v. Libbie* (1912), 210 Mass. 599, 97 N.E. 109; Note, 44 Iowa L. Rev. 705 (1959).) All she was asking was its production in connection with a matter that was in litigation. She was not intruding on any relation of trust and confidence with the court. Of course, she should not have made what was an *ex parte* communication with Judge Liffshin. But, being a layperson, untutored in the law and acting in good faith, her conduct is understandable. Indeed, the *ex parte* nature of the communication, it seems to us, was the valid reason for its production by the judge to whom it was made, and for its being spread of record. To be candid about it, we are bewildered at the suggestion that the letter was a confidential communication betwen Judge Liffshin and Kathleen Pacatte. Therefore, in any further proceedings, the letter should be produced by Judge Liffshin. If it cannot be, then Kathleen Pacatte should be allowed an opportunity to prove its contents by secondary evidence, consistent with the rules governing such matters.

## IV.

For the reasons we have given, the orders subject to this appeal are reversed. The cause is remanded with directions that Kathleen Pacatte's

petition for change of venue from Judge Reuben J. Liffshin be granted, and for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

DOWNING, P. J., and STAMOS, J., concur.