*In re* MARRIAGE OF PAULINE SIPICH, Petitioner-Appellee, and RUDOLPH SIPICH, Respondent-Appellant.

First District (4th Division)   Nos. 78-1567, 78-1647 cons.

Opinion filed January 31, 1980.

Eileen Colman and Mel Cahan, both of Chicago, for appellant.

Grant, Grant & Stein, of Chicago (Jerome Marvin Kaplan, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

Pauline Sipich, the petitioner, and Rudolph Sipich, the respondent, were married in June of 1957, had four children between the years of 1958 and 1965, and were separated in 1972. Pauline Sipich brought an action for dissolution of marriage. Following a bench trial in the circuit court of Cook County, the court ordered the marriage dissolved and awarded

Pauline Sipich child support, property, and attorney's fees. The court subsequently entered an order finding Rudolph Sipich in contempt of court for failure to make payments allegedly due under the terms of the judgment.

On appeal, Rudolph Sipich argues (1) that Pauline Sipich failed to prove any right to child support payments, that the award of child support was contrary to the manifest weight of the evidence, and that the amount of child support is excessive; (2) that Pauline Sipich is not entitled to maintenance; (3) that the distribution of property was disproportionate and unjust; (4) that the court abused its discretion in awarding attorney's fees to Pauline Sipich's attorney; (5) that the contempt order is void because the court erred in denying a petition for change of venue; and (6) that he did not wilfully or contumaciously disobey an order of the court.

At trial, Rudolph Sipich was called as an adverse witness by Pauline Sipich. He testified that his four children ranged in age from 12 to 20. He said he was 47 years old and that he is in the insurance brokerage business. The name of the business is Rudolph M. Sipich, CLU & Associates, Inc. He owns all of the stock in the corporation. Rudolph Sipich said his wife is 46 years old and that for the past three or four years she had been gainfully employed. At the time of trial he was sending Pauline Sipich $185 per week voluntarily. He was also paying her car expenses through his corporation, including gasoline and maintenance, her monthly phone bill which was about $26, and another $60 per month for the gas and oil for the home. Rudolph Sipich said the total sum he was providing monthly to Pauline Sipich and his children was approximately $950.

Rudolph Sipich testified that the family residence was purchased in the late 1960's for approximately $40,000, with a down payment of $10,000. The balance due on the mortgage is $23,000. Monthly payments are $315 per month which includes principal, interest, taxes and insurance. The market value of the home today is $80,000. The equity in the house is $53,000 minus sale costs which would result in a net profit of about $45,000. Rudolph Sipich estimated the combined value of the family home furnishings and Pauline Sipich's car at $15,000 to $20,000.

Rudolph Sipich said he lives in an apartment in a building he owns at 25 West Plainfield. His business also operates from that address. The building contains three apartments and two stores. He occupies two of the apartments, one for his business and the other for a residence. The rest of the space in the building is rented. The income from the one rental apartment is $275 per month. The rents on the stores are $406 and $550 per month. The corporation pays $610 per month for the two remaining apartments. The total rental income last year was $16,691, and the total expenses were $18,372. Rudolph Sipich introduced a letter from a professional appraiser which shows the fair market value of the Plainfield

property to be $120,000 as of March 1977. In a financial statement executed in February 1977, Rudolph Sipich said the value of the Plainfield property was $145,000.

Rudolph Sipich said he acquired the Plainfield property in December 1975. The price was $120,000 and he made a $25,000 down payment with money borrowed from a bank. The original mortgage was $95,000 which was payable in monthly installments of $1,030. When he purchased the Plainfield property he completed a financial statement and listed his total assets as "$150,000 or $175,000." This was three years ago.

Rudolph Sipich testified his income from the business is about $12,000 per year. He gets a check each week for $210 from the business. This represents his draw. He also said his annual draw from the business is determined at the end of each year and depends upon the corporation's profit or loss for the year. His accountant decides how much the draw will be.

Rudolph Sipich said his personal monthly expenses are approximately $700 to $750 per month. He said he has a number of credit cards. He charges his grocery bills to the credit account and charges the bills to the corporation. He does the same with Pauline Sipich's gas and oil bills for her car. He uses corporate funds for the purchase of his and Pauline Sipich's cars and also charges entertainment expenses to the corporation.

The corporation's tax return for the fiscal year ending September 30, 1975, showed a deduction of $3833 for entertainment and $2824 for vehicle expenses. That year Rudolph Sipich had an income of $24,500. For the tax year ending September 1976, Rudolph Sipich's salary was $13,700; vehicle expenses were $4661.58 and entertainment expenses were $6145. The 1976-77 corporate tax return showed a salary of $12,000 and entertainment expenses of $11,548.

Rudolph Sipich explained that his entertainment expenses had increased because the corporation took on a group insurance program which required a large initial investment. He also explained that his 1974-75 salary was higher than in subsequent years because he wrote a $1,000,000 insurance policy on a friend and received the commission to deposit on the Plainfield property. The policy was later allowed to elapse and the commission is still carried today as money due even though he will never receive it.

Pauline Sipich testified that she is 45 years old. She said she has $2000 in the bank and that she has been gainfully employed for the past five years doing office work. Her net earnings are $126 per week. She uses the money for household expenses. She also testified that the money she had been receiving on a voluntary basis from Rudolph Sipich was not sufficient to maintain herself and the children.

Pauline Sipich's attorney testified that his work on behalf of Pauline

Sipich in this case involved eight hours of appointments, 19 court appearances totalling 20½ hours, and preparation of pleadings totalling four hours. His rate is $100 per hour for office work and $150 per hour for court work. The fee he is seeking is $5225. On cross-examination he conceded that a deposition listed in his records was never taken. His petition for fees included copies of the appropriate time records.

In its judgment order the trial court found that Rudolph Sipich had been voluntarily giving Pauline Sipich $950 per month and that he testified his personal expenses amounted to $750 per month. The court commented that such expenditures could not be made from an income of only $12,000, and concluded that Rudolph Sipich had to be earning more than he claimed. The court estimated Rudolph Sipich's actual income as $25,000 per year.

The trial judge further found that the marital home had a net equity of $60,000 and that the business had a net equity of $62,000. He noted that the vaule of the business which is solely owned by Rudolph Sipich is difficult to determine.

The home was awarded to Pauline Sipich and the business to Rudolph Sipich. Pauline Sipich was awarded $100 per month for a period of three years "to enable her to have sufficient time to adjust her own economy and housekeeping and to arrange for some way in which to discharge the mortgage obligation."

Rudolph Sipich was further ordered to pay Pauline Sipich $785 per month for child support, effective July 18, 1978, and to pay Pauline Sipich's attorney $3090 after making deductions for the deposition that was not taken, "certain unnecessary expenditure[s] of time," and the retainer previously received. Rudolph Sipich's attorney's request for fees was denied.

On August 4, 1978, 2½ weeks after the entry of the judgment, Pauline Sipich brought an emergency petition alleging that $885 was due from Rudolph Sipich on the date of the judgment; that $400 had been paid and that Rudolph Sipich was thus $485 in arrears. Rudolph Sipich presented a petition for a change of venue the same day, alleging that he feared and believed the trial judge was prejudiced against him or his attorneys. The court denied the petition for change of venue as not being timely. After a number of hearings the court found Rudolph Sipich in contempt and ordered him committed to the county jail for 60 days.

Rudolph Sipich's first argument on appeal is that Pauline Sipich failed to prove any right to child support payments from him. Child support awards are governed by section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 505), which requires that five different factors be considered. Rudolph Sipich contends there is no evidence in the record concerning at least two of

those factors: financial needs of the custodial parent and expenses of supporting the children. He submits that the amount of the voluntary payments which he had been giving to Pauline Sipich does not constitute sufficient evidence on which to base court-ordered payments. Rudolph Sipich also argues the award was contrary to the manifest weight of the evidence and excessive because his income is $910 per month and he has been ordered to pay $785 per month in child support, leaving him only $125 per month. For the next 36 months he must pay $100 of that $125 to Pauline Sipich.

Pauline Sipich testified that Rudolph Sipich had been making voluntary payments of $185 per week and, additionally, had been paying the bills for her car, the telephone, and gas and oil for the home. She also said the $185 per week was not sufficient to pay all the bills and that she had to supplement this money with her own salary. In his closing argument Rudolph Sipich's attorney did not contend that there was insufficient evidence on which to base an award of child support. The trial court has wide discretion in awarding child support. (*Knox v. Knox* (1975), 31 Ill. App. 3d 816, 334 N.E.2d 891.) Under the circumstances presented here we cannot say the court erred by relying on Pauline Sipich's testimony concerning the amount of the voluntary payments Rudolph Sipich had been making and the inadequacy of this amount of money.

■■ Rudolph Sipich contends the award is excessive. We believe the court was justified in concluding that Rudolph Sipich's annual income substantially exceeded the $12,000 which he claimed. Rudolph Sipich himself testified that the corporation, of which he is the sole shareholder, pays his food bills, automobile expenses and rental on his apartment. Furthermore, Rudolph Sipich testified that while he was giving Pauline Sipich voluntary payments amounting to approximately $950 per month during their separation, his own expenses were approximately $700 to $750 per month. This testimony could be taken by the court as an admission by Rudolph Sipich that he was capable of making the payments. (*Popeil v. Popeil* (1974), 21 Ill. App. 3d 571, 315 N.E.2d 629.) Because total expenses of $1650 to $1700 per month clearly cannot be maintained on an annual income of $12,000, and this discrepancy was not explained by Rudolph Sipich prior to the judgment,[1] the trial court was justified in concluding that Rudolph Sipich in fact had income in excess of the reported $12,000. We cannot say the child support award was excessive or against the manifest weight of the evidence.

Rudolph Sipich's next argument is that the court erred in granting

---

[1] It was not until the contempt proceedings that Rudolph Sipich explained that he had depleted his savings during the period of separation.

Pauline Sipich $3600 in maintenance. Pauline Sipich responds that it was not an award of maintenance, but rather part of the division of marital property. In his reply brief, Rudolph Sipich appears to accept this contention, and we will therefore consider it in the context of his next argument.

Rudolph Sipich argues the distribution of marital property was disproportionate and unjust. The trial court awarded the entire interest in the marital home to Pauline Sipich, along with the household furniture and furnishings. She was also awarded $3600, to be paid by Rudolph Sipich in 36 monthly installments. Pauline Sipich was allowed to keep her $2000 savings account and two life insurance policies, which Rudolph Sipich must maintain for the benefit of the children. Rudolph Sipich was awarded his insurance brokerage business and the building housing it.

Rudolph Sipich argues the division of property ordered by the court gave Pauline Sipich property with a total value of $73,600 while his own share of the marital property is a $500 debt. Pauline Sipich does not dispute the value of the marital property she received as it is calculated by Rudolph Sipich: a $53,000 equity in the marital home, $15,000 in furniture and furnishings, $3600 in the lump sum settlement and a $2000 bank account. The parties' dispute concerns the value of the insurance business and the Plainfield property which were allotted to Rudolph Sipich.

Rudolph Sipich contends the fair market value of the Plainfield property is $120,000, relying on his own testimony and the opinion of the independent appraiser. The mortgage balance on the property is $92,500. Rudolph Sipich testified he borrowed $30,000 from the National Bank of Austin in order to make the $25,000 down payment on the property and that the balance due on that loan is $28,000. He thus concludes his equity in the property is a negative $500. He introduced evidence to show that the expenses of the property exceed the gross rental income. Rudolph Sipich also contends that he has no equity in the business itself. He bases this conclusion on the fact that the corporate tax returns show little or no retained earnings and, for the fiscal year ending September 1977, the return shows a negative retained earnings figure. Finally, he says that because there was no evidence presented concerning the value of the corporate stock, no value may be assigned.

The trial judge concluded that the marital home had a net equity of about $60,000 and the business property a net equity of $62,000. The court also found that the value of the business solely owned by Rudolph Sipich was difficult to determine.

■■ We believe the court was justified in concluding that the insurance business and Plainfield property had a value approximately equal to the equity in the marital home. The division of the marital property was therefore not disproportionate and unjust. Pauline Sipich introduced into

evidence a financial statement which Rudolph Sipich had completed in February 1977, a little more than two years after the acquisition of the Plainfield property. That statement lists the fair market value of the Plainfield property as $145,000. The trial court was certainly justified in accepting this figure rather than the $120,000 figure to which Rudolph Sipich testified and which was verified by his independent appraiser. The financial statement does not disclose the $30,000 which Rudolph Sipich contends he borrowed to make the down payment on the Plainfield property. Rudolph Sipich contends that it is disclosed by the question, found on the form, stating "Are any assets pledged?" The response given was "yes Nat'l Bank of Austin." However, we note that Rudolph Sipich testified the $30,000 was an unsecured loan from the National Bank of Austin. The space on the form labeled "notes payable to bank—unsecured" was left blank, as was the "other debts" section. We conclude the trial court was acting within its discretion to find that the property had a fair market value of $145,000 which, minus the balance due on the mortgage of $92,500, showed an equity of $52,500.

Additionally, we cannot accept Rudolph Sipich's argument that the business itself had no value merely because the corporate tax return showed little or no retained earnings. The business certainly had some value by virtue of the fact that it was a going concern, and the trial court was not required to disregard this fact merely because there was no expert testimony concerning the value of the corporate stock.

Finally, Rudolph Sipich testified that the Plainfield property produced income of $16,691 per year. However, the monthly rentals he described show an annual income of $22,092. The trial court would have been justified in taking into consideration this discrepancy in Rudolph Sipich's testimony.

Rudolph Sipich next argues the court erred in requiring him to pay Pauline Sipich's attorney's fees. The statute provides that the court, "after considering the financial resources of the parties, may order either spouse to pay * * * his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred by the other spouse * * *." (Ill. Rev. Stat. 1977, ch. 40, par. 508(a).) Rudolph Sipich relies on *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576, holding the party seeking to have his attorney's fees paid must show both his own inability to pay the fees and the ability of the other spouse to do so. Rudolph Sipich contends the evidence in the record does not support such a finding. He also contends the documentation offered by Pauline Sipich's counsel concerning his legal work was insufficient because the records were merely appended to his petition and were never introduced into evidence.

■■ Allowance of attorney's fees in a divorce proceeding rests in the

sound discretion of the trial court, and exercise of that discretion will not be disturbed unless it is clearly abused. (*Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) We cannot say that the trial court abused its discretion in requiring Rudolph Sipich to pay both his own and Pauline Sipich's attorney's fees. As previously noted, the trial court was justified in concluding that Rudolph Sipich's earnings were substantially in excess of the $12,000 he claims. In light of this fact, Rudolph Sipich's financial resources are sufficiently greater than Pauline Sipich's to warrant the award of attorney's fees. The records appended to the petition for fees coupled with Rudolph Sipich's opportunity to cross-examine the attorney constituted sufficient evidence upon which to base the award.

Rudolph Sipich next argues the court erred in denying his motion for change of venue and that all subsequent orders were null and void. He contends a petition for enforcement of an order is a new proceeding and that the trial judge thus had no discretion to deny his petition for change of venue which, he submits, was timely filed and met the other statutory requirements for change of venue. Ill. Rev. Stat. 1977, ch. 100, pars. 501 *et seq.*

Pauline Sipich relies on Circuit Court Rule 15.3 which states in part:

> "The post judgment motion judge shall hear all motions, petitions and applications made more than 30 days after the entry of a judgment of divorce, separate maintenance or annulment."

Because her petition seeking a rule to show cause why Rudolph Sipich should not be held in contempt for failing to pay maintenance, child support and attorney's fees was filed within 30 days of the date of the original order, Pauline Sipich contends that the case was properly before the original trial judge.

Although the trial court retains jurisdiction to enforce the terms of an original divorce decree (*Brickey v. Brickey* (1976), 44 Ill. App. 3d 563, 358 N.E.2d 406), this does not end our inquiry as to the propriety of the trial court's denial of Rudolph Sipich's motion for a change of venue. That issue turns on the further question of whether Pauline Sipich's filing of a petition to show cause as to the alleged arrearages commenced a "new proceeding."

Illinois courts are in agreement that a petition to *modify* a previous divorce decree does constitute a new proceeding and is, therefore, subject to the statutory change of venue provisions. (See, *e.g., Des Chatelets v. Des Chatelets* (1937), 292 Ill. App. 357, 11 N.E.2d 13; *Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, 340 N.E.2d 68.) In *Gates v. Gates* (1963), 38 Ill. App. 2d 446, 187 N.E.2d 460, the court held the trial court erred in refusing to grant a timely petition for change of venue where the petition was filed both to show cause as to alimony arrearages and to modify the original decree by increasing the amount of the payments. We

see no reason for the venue rules to be different in the case of a petition seeking enforcement as opposed to modification of a divorce decree. Further, we cannot agree that the above-quoted circuit court rule should have any effect upon a party's right to a change of venue. That rule pertains only to assignment of cases.

■■ No question is raised as to the timeliness of Rudolph Sipich's petition or other requirements set forth in the statute. We thus conclude the trial court erred in denying the petition for change of venue. Consequently, the subsequently entered order finding Rudolph Sipich in contempt of court is void. *Johnson v. Johnson* (1975), 34 Ill. App. 3d 356, 340 N.E.2d 68.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded to the circuit court with directions to grant Rudolph Sipich's petition for change of venue.

Affirmed in part; reversed in part and remanded.

LINN, P. J., and JOHNSON, J., concur.