Henry D. Lytton, Ware Lynch, Louise L. Gaston (Formerly Known as Louise Lynch Getty), and Walter Lytton, Plaintiffs-Appellants, v. Willard W. Cole, et al. First National Bank of Chicago, a National Banking Association, Lytton's, Henry C. Lytton & Co., a Corporation, Helene Williman, et al., Defendants-Appellees.

Gen. No. 49,561.

First District, First Division.

December 14, 1964.

Richard F. Watt, David R. Kentoff, Albert Siegel, and Cotton, Watt, Rockler & Jones, all of Chicago, for appellants.

Raymond T. Denten, Daniel C. McKay, Roger Metz, and Robert E. Samuels, and Ettelson, O'Hagan, Ehrlich & Frankel, all of Chicago, for Willard W. Cole, Leonard B. Ettelson, Carlotta Doty Lytton, and First National Bank of Chicago, appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

The plaintiffs, beneficiaries of a testamentary trust, brought this action on June 14, 1961, against the de-

fendants as executors under the will and as trustees under the trust charging them with breach of their fiduciary obligations in their dealing with a large block of common stock of Lytton's, Henry C. Lytton and Company, an Illinois corporation, engaged in owning and operating retail apparel stores in Chicago. This appeal is from an order of the trial court entered on November 26, 1963, granting the motion of certain defendants to strike the amended complaint and dismissing the cause at plaintiff's costs.

The testator, Henry C. Lytton, who died on March 31, 1949, was survived by defendant Carlotta Doty Lytton, his spouse; plaintiff, Walter Lytton, a son; Gertrude Benziger, a daughter; and defendants, Katherine Lytton Zazulinski and Rosemary Lytton Sheppard, grandchildren. The plaintiffs are Walter Lytton, a primary beneficiary under the trust, and Henry D. Lytton, Louise Lynch Gaston and Ware Lynch who are remaindermen under the trust. The defendants with whom we are concerned are First National Bank of Chicago, Carlotta Doty Lytton and Willard W. Cole all of whom are executors under decedent's will and trustees of the trust and Leonard B. Ettelson, attorney for the Estate of Henry C. Lytton and the Lytton company. The First National Bank of Chicago, in addition to being executor and trustee, is the transfer agent of the capital stock of the corporation and defendant Carlotta is a primary beneficiary of the trust.

The decedent's last will and testament, dated March 25, 1944, was admitted to probate on April 27, 1949. Prior to his death, decedent was the chief executive officer of the corporation and when he died, decedent owned 83,000 shares of the corporation's common stock which then had 336,200 shares of $1 par value common stock outstanding.

The plaintiffs' complaint, which was filed in the Circuit Court on June 14, 1961, was stricken on defendants' motion whereupon the plaintiffs filed an amended complaint. Plaintiffs contend that, contrary to their fiduciary obligations, the defendants, First National Bank of Chicago, Carlotta Doty Lytton, and Willard W. Cole, in connivance with defendant, Leonard B. Ettelson, conspired and schemed to retain control over the defendant corporation, Lytton's, by carrying out in self-dealing transactions the sale of a block of 83,000 shares of Lytton's stock which was held by the estate and which represented approximately 25 per cent of the outstanding shares, at a bargain price of $8 for the benefit of defendants, Carlotta and Cole.

The defendants contend that the amended complaint consists of unsupported conclusions and that the facts pleaded therein fail to charge the defendants with any wrongful conduct; that the matters in controversy were adjudicated by the Probate Court when, on February 16, 1955, an order was entered approving the Executors' Third and Final Report and Account and discharging the executors and are not subject to collateral attack; that since the Probate Court ordered the sale of the stock in question to Carlotta about eleven years before this suit was commenced, the claim is barred by laches, by the statute of limitations and by res judicata.

Defendants' motion to strike and to dismiss the complaint admits the truth of all the facts well pleaded. Miller v. City of Chicago, 348 Ill 34, 180 NE 627. Not admitted, however, are conclusions drawn by the pleader from those facts. Kurtzon v. Kurtzon, 395 Ill 73, 69 NE2d 341. Fraud, collusion, or conspiracy cannot be made out by the interpolation of adjectives characterizing acts alleged to be done as fraudulently

164

done. Nechanicky v. Morton Park Federal Savings & Loan Ass'n of Cicero, 32 Ill App2d 444, 178 NE2d 197.

■ That a fiduciary relationship existed between the parties appears to be conceded. Persons or corporations who accept positions as conservators, executors, trustees, etc. are thereby placed in a fiduciary relationship and should observe, or should be compelled to observe, the law which governs the high duty which they have agreed to perform. In re Estate of Nonnast, 300 Ill App 537, 21 NE2d 796. In Consumers Co. v. Parker, 227 Ill App 552, the court stated:

> Public policy forbids every fiduciary from in any manner dealing in the subject-matter of the relation, and from using for himself any information gained by him in regard thereto. The rule is not merely remedial, for wrong actually committed, but is intended to be preventive of wrong. Interest in or control over the subject matter is not essential to the raising of a trust. It is of no consequence that no fraud was intended, that no advantage was gained by the fiduciary, or that no damage was done to the principal. (227 Ill App at 563.)

Plaintiffs having elected to stand upon the amended complaint, judgment was entered for defendants, from which plaintiffs appeal. With the above rules and principles in mind we first consider the allegations charging the defendants with violating their fiduciary obligations by dealing in trust assets for their personal benefit. Plaintiffs alleged in the amended complaint that on June 29, 1950, a petition was filed in the Probate Court by the executors-trustees asking approval of a public offering and sale

165

of the 83,000 shares on the ground that it was in the best interests of the estate. The Probate Court approved the proposed offering and sale on October 25, 1950, and the executors-trustees prepared the required registration statement. It was further alleged that prior to the filing of the petition to sell, defendant Cole owned 65,520 shares or 19.54%; defendant Carlotta owned 13,000 shares or 3.9%; defendant Ettelson owned 1,100 shares or 1.33%. Golding, Inc., the principal buying agent owned 25,000 shares or 7.44%. Under these circumstances the plaintiffs alleged that the 23.77% held by the estate had to be kept in the possession of persons friendly to defendants, if defendants were to be certain of retaining effective control over the corporation.

It is alleged in general terms that, in furtherance of their plan and conspiracy, defendants, Cole, Carlotta and the First National Bank, along with defendants Ettelson and Lytton's, disregarding the interest of the beneficiaries under decedent's will, engaged in numerous self-dealing transactions, and did or arranged to do certain specific overt acts: (a) that on or about October 10, 1950, the executors-trustees and decedent's daughter, Gertrude Benziger, and her husband, agreed that the Lytton's stock be sold to pay the Benzigers the sum of $350,000 on their alleged claim against the estate; (b) that about November 17, 1950, pursuant to the agreement Lytton's, by its officers, defendant Cole, as president, and defendant Ettelson, as secretary, filed a registration statement with the Securities Exchange Commission whereby the 83,000 shares of Lytton's held by the estate were to be offered for public sale at an estimated price of $10 per share; (c) that between November 17, 1950, and December 6, 1950, the defendants decided to arrange for a sale of the stock by interesting friendly parties to take the securities at a bargain sale of $8 per share

166

so that these persons could hold the shares until the defendant corporation, acting under the control of the defendants, and specifically defendants Carlotta, Cole and Ettelson, arranged to retire a large portion of the shares so acquired and held by such friendly persons; (d) that the executor-trustees, acting through Ettelson, arranged for the City National Bank and Trust Company, as escrowee for undisclosed principals, to submit an offer for the purchase of 73,000 shares at $8. On the same day Carlotta offered to purchase 10,000 shares contingent upon approval of the Bank's offer; about the same time certain New York persons offered $8 per share; (e) that the executor-trustees failed to advise the Probate Court that they had been instrumental in setting up the escrow and had arranged for friends and associates to participate in the offer and deliberately concealed from the Probate Court and the plaintiffs, the identity of the purchasers who were known to them; (f) that the bid by Carlotta for 10,000 shares was conditioned upon Carlotta's being permitted to defer payment by utilizing a portion of what she would receive from the estate pursuant to the terms of an ante-nuptial agreement; (g) that the executor-trustees acting through their agent, Ettelson, gave all instructions to the escrowee; (h) that in order to carry out their plan and conspiracy the executor-trustees prevailed upon the Probate Court to enter an order on December 6, 1950, authorizing the acceptance of the bids made by undisclosed purchasers and Carlotta; (i) that the sum of $1,500 was paid to the New York bidders in settlement of their claim arising out of their rejected bid; (j) that about December 18, 1950, the executor-trustees informed the S.E.C. that the registration was withdrawn and that the stock was sold at a private sale; (k) that the executor-trustees failed to consult with the plaintiffs concerning the sale of stock

167

and failed to ascertain whether the stock was sold at a fair price; (l) that by hurrying the proceedings in the Probate Court the executor-trustees made it impossible for the plaintiffs and the beneficiaries to investigate the circumstances under which the escrow was established; (m) that in inducing the Probate Court to approve a price of $8 per share, the executor-trustees deliberately failed to advise the court that the approximate book value of the stock was in excess of $15 per share or that Lytton's had retired some of its shares in 1949 at $15 per share and in 1950 at nearly $13 per share; (n) that in inducing the approval of the sale the executor-trustees fraudulently failed to disclose to the court that they had a personal and conflicting interest in the submitted proposed sale and had the facts been disclosed the sale would not have been approved; (o) that after the approval of the sale by the court, Lytton's, acting under the control of the executor-trustees and specifically Cole, Carlotta and Ettelson, retired 6,200 shares in 1952, 10,-000 shares in 1953, 20,000 shares in 1954, and 25,000 shares in 1956, totalling 61,200 shares at about $8 per share using in part funds borrowed from the First National Bank; (p) that during the years between 1950 and 1961 defendant Cole purchased approximately 22,000 shares of Lytton's and some of the shares were shares that had been sold out of the estate to the City National Bank, as escrowee for undisclosed purchases; (q) that in their positions as controlling parties in the corporation, the executor-trustees arranged to sell the majority stock interest on June 15, 1961, to Cluett, Peabody & Co. of Troy, New York at a price of $15 per share.

The complaint further charged that the defendants knowingly and wilfully defrauded the beneficiaries of the estate by selling the stock at $8 when they knew or should have known that the price was inadequate

thereby violating their fiduciary obligations in order to control Lytton's and eventually to sell their interests at a large personal profit. The complaint went on to allege that the estate had been substantially diminished and plaintiff Walter Lytton who should have received an income of $12,000 per year has received $3,000 per year and that as beneficiaries the plaintiffs are entitled to require the trustees to account for their acts and doings.

Among the numerous grounds specified in their motion to dismiss, the defendants contend that the claim of the plaintiffs constitutes a collateral attack on the various final orders of the Probate Court and is barred by the doctrine of res judicata. We agree.

The instant complaint was filed in June of 1961. Between six and eleven years earlier the Probate Court entered various orders directing the sale of the 83,000 shares, denying leave to file a petition for removal of the executors, and approving the second and final reports of the executors and discharging them. No appeal was taken from any of these orders.

At the time these orders were entered, the probate courts were separate from the circuit courts and they had jurisdiction of all probate matters specified in the constitution (Ill Rev Stats 1961, Constitution of 1870, Art 6, § 20), but their judgments are entitled to the same protection as the courts of general jurisdiction. Hence the doctrine of res judicata is available to prevent collateral attack on judgments of the probate courts rendered within the scope of their jurisdiction. Healea v. Verne, 343 Ill 325, 175 NE 562 and In re Estate of Trapani, 21 Ill App2d 19, 157 NE2d 83.

The doctrine of res judicata is based on the requirements of justice and public policy that a matter once adjudicated should be deemed finally and conclusively settled in any subsequent litigation between

the same parties where the same question arises, except where the later litigation is a direct attack by way of appeal to set aside or reverse the former adjudication. Charles E. Harding Co. v. Harding, 352 Ill 417, 186 NE 152 and cases there cited. The Harding case sets out the elements of the doctrine in these words:

> The doctrine of res judicata is, that a cause of action finally determined between the parties on the merits, by a court of competent jurisdiction cannot again be litigated. . . . The principle of res judicata applies, however, to cases where, although the cause of action is not the same, some fact or question has been determined and adjudicated in a former suit and the same fact or question is again put in issue in a subsequent suit between the same parties. (352 Ill at 426.)

In our opinion the orders of the Probate Court on October 25, 1950, December 6, 1950, and June 20, 1951, contain all the elements required by the doctrine and hence constitute a bar to the present action. The plaintiffs contend that these judgments did not involve the merits of the present case and that since the prior judgments were obtained by fraud and collusion in concealing certain facts from the Probate Court they cannot be relied on as res judicata here.

Our examination of the proceedings in the Probate Court, which we now review, persuades us that the plaintiffs' contentions cannot be sustained. In the order of October 25, 1950, the court recited that the matter was presented on the petition of the executors to sell the 83,000 shares; that the court was presented with a written agreement between the executors and the Benzigers, who were creditors of the estate, stipulating that the said shares should be registered and sold; that due notice was given to all counsel of rec-

ord. The court, after examination of the agreement and after having heard the arguments of counsel, found that, in pursuance of a contract between the deceased and the Benzigers, a certificate for 64,300 shares of Lytton's had been pledged for the payment of a $300,000 indebtedness owing to the Benzigers on which a final order had been entered in their favor as creditors of the estate. The court further found that the Benzigers held a valid and enforceable pledge and possessed a valid lien on the 64,300 shares for the payment of the indebtedness. The order gave the executors the authority to proceed with the sale of the 83,000 shares providing that the Benziger lien be fully paid. The court also ordered that Walter Lytton be given notice by the executors of their application for court approval of the price or prices for which the sale would be made and that the price be subject to approval by the court.

Subsequently, on December 6, 1950, a petition was filed with the Probate Court in which the executors indicated that a Chicago underwriting house, which had been contacted for the underwriting and marketing of the 83,000 shares, advised them that under the existing public market conditions the maximum price that could be obtained would be approximately $7.50 per share. It was also indicated that the private offers had been received from the City National Bank and Trust Company of Chicago to purchase 73,000 shares at $8 per share and from Carlotta Doty Lytton for 10,000 shares at $8 per share, and from Harold Drimmer and Newton Glekal, of New York City, to purchase 83,000 shares at $8 per share. The executors indicated that these offers constituted the highest prices and the most advantageous terms and conditions for the purchase of the shares and they prayed for direction as to the manner in which the stock should be sold. On the same day the petition was

171

filed, the Probate Court, after hearing all the parties in interest, with respect to the subject-matter and being fully advised in the premises, authorized the executors to accept the bids of the bank, as escrow agent, and of Carlotta Doty Lytton, adding that all of the provisions of the order of October 25 for the protection of the rights and interests of the Benziger should remain in full force.

Thereafter on June 20, 1951, Walter Lytton filed a petition in the Probate Court in which it was alleged that Willard Cole and Carlotta had sufficient shares of Lytton's to assure their control so long as they were able to vote the 83,000 shares belonging to the estate; that the executors had engaged in fruitless litigation to prevent sale of the shares and to retain control thereof; that the trustees and executors "continued to keep this estate open until December 6, 1950, when they contrived to induce this court to sell to the said Carlotta and the City National Bank and Trust Co., as escrow agent for a group of friends of the said Cole and Carlotta the aforesaid eighty-three thousand (83,000) shares of stock in the Corporation for the sum of Eight Dollars ($8) per share in spite of the fact that they, the said respondents, knew very well that there were other financially responsible persons who were ready, willing and able to pay more than Eight Dollars ($8) per share."

The petition further alleged that the defendants Cole and Carlotta drew large salaries from the corporation; that the bank and Ettelson derived gains from the corporation; that, under the will of the deceased, Carlotta received large annuities and that "the only possible chance that Carlotta possessed of enjoying any substantial payments to her of said annuities, lay in the hope that the eighty-three thousand (83,000) shares of capital stock of the Corporation standing in the name of the decedent could be retained

by the Executors for an indefinite period, and could be made to yield large dividends, or until such time as the Executors could arrange to make a sale of stock so that the said Cole and Carlotta could be assured of retaining control of said Corporation."

The petition further charged that the executors and Ettelson conspired and confederated to prevent any interference with their control of the 83,000 shares; that considerable time and expenses were unnecessarily spent by the executors in their opposition to the Benziger claims and that after the claims in excess of $300,000 were allowed, the estate was required to needlessly pay interest at the rate of 5% on said claims for almost two years; that the executors refused to recognize the validity of the claims and to sell the stock in order to keep the estate open and retain control of the stock; that notwithstanding their fiduciary relationship with the deceased, the executors manipulated the affairs of the deceased to unjustly enrich themselves and deplete the assets of the estate. Many other charges were made which we have omitted because they are not pertinent to the issues here. Among other relief requested, the petitioner Walter Lytton sought removal of the executors. On the day the petition was filed, Judge William Waugh who had heard all of the prior proceedings, denied the motion for leave to file the petition after examining the petition and hearing the argument of counsel and being fully advised in the premises.

On December 28, 1950, Walter Lytton filed a petition in the Probate Court in which he alleged that on December 8, 1950, 83,000 shares of Lytton's were sold at $8 per share by order of court and he requested payment of moneys allegedly accruing to him. On August 17, 1951, Walter Lytton objected to the second report and account of the executors. The Probate Court in approving the report and account specifical-

173

ly took note of Walter Lytton's objections. Finally on February 16, 1951, the Probate Court approved the third and final account and discharged the executors.

It appears from the record that all of the parties involved in the present case were represented in all of the proceedings just described. All of the defendants were before the Probate Court except the defendant, Lytton's, Henry C. Lytton & Co., which has not been charged with any wrongful act in the instant amended complaint. All the plaintiffs in the instant case were represented in the litigation before the Probate Court. The records show an appearance filed by John J. Hogan, as attorney for the plaintiff, Henry D. Lytton, Louise Lynch Getty (now Louise L. Gaston) and W. Ware Lynch. Furthermore, on December 6, 1950, the Probate Court appointed a guardian ad litem to represent the interests of several minors, Ware Terry Lynch, Frankie Williman, Timothy Christopher Ware Getty and Sharon Lynch. Finally the plaintiff, Walter Lytton, was before the Probate Court by the filing of the several petitions and other documents described above.

It also appears from the record that all the facts alleged in the instant amended complaint were already adjudicated in the various proceedings in the Probate Court. In addition, we think that the issues raised in the Probate Court are substantially the same as those contained in the amended complaint here. Although the word "fraud" as such was not mentioned in the Probate Court, it is clear that the accusation that the defendants conspired to sell the Lytton's stock held by the estate at a low price to friendly persons controlled by them, was raised in that court. The charge of breach of fiduciary duty which was made in the amended complaint and strongly emphasized in this appeal was clearly before the Probate Court, for, in assessing the performance of an

174

executor, as it was asked to do at every point of the prior litigation, the Probate Court must have known that it was dealing with fiduciaries and their duties. In addition, Walter Lytton's petition of June 20, 1951, specifically raised the issue of breach of fiduciary duty as indicated above.

■ The plaintiffs insist that the judgments of the Probate Court do not constitute a bar to the bringing of this suit. First they argue that in denying to Walter Lytton leave to file his petition for removal of the executors, the Probate Court did not thereby reach the merits of the issues raised therein and therefore it could not render a decision on the merits. We cannot agree. A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties based on the ultimate facts or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends, irrespective of formal, technical or dilatory objections or contentions, even though the theory upon which the plaintiff is proceeding in that court is different from the one advanced in the court in which the decree was entered. Howard T. Fisher & Associates, Inc. v. Shinner Realty Co., 24 Ill App2d 216, 164 NE2d 266, citing with approval 23 ILP, Judgments, sec 322 and cases there cited. It appears on the face of the probate order that the court considered the facts set forth in the pleading, heard the argument of counsel and was "fully advised in the premises" and hence decided the case on the issues set forth in the petition and not on such preliminary grounds as existed in the following cases relied on by the plaintiffs: Griffith v. Bank of New York, 147 F2d 899 (CA 2d) where the prior judgment was dismissed because of lack of jurisdiction and hence could not be res judicata of the later action; and McCarthy v. McCarthy, 9 Ill App 2d 462, 133 NE2d 763, where a former adjudication

175

in the Probate Court was held not to be res judicata of a later case in the Circuit Court involving the partition of real estate because the Probate Court lacked jurisdiction to determine title to real estate and hence could not have decided the issues raised in the partition proceeding. Furthermore, it is not necessary that the prior adjudication be based on facts proved, but it is sufficient that the judgment was based on facts alleged and admitted. Cheevers v. Stone, 10 Ill App 2d 39, 134 NE2d 32. We believe that in its order denying Walter Lytton's petition the Probate Court considered the alleged facts as true, and nevertheless, concluded that they did not warrant removal of the executors.

Finally the plaintiffs argue that the orders of the Probate Court do not bar this suit on grounds of res judicata because they were secured by fraud on the Probate Court in concealing the identity of the purchasers for whom the City National Bank was acting as escrowee and in not disclosing the fact that the book value of Lytton's stock was $15. A judgment, which is void because fraudulently obtained, will not operate as res judicata. First Nat. Bank & Trust Co. v. Village of Skokie, 190 F2d 791 (CA 7th), cert den 72 S Ct 303. We do not find that there was fraud in the instant case. Two of the basic elements which are necessary to show fraud are not met here. One of the basic elements of fraud is that the party on whom it is alleged to have been committed (the Probate Court here) must be unaware of the nondisclosure or of the falsity of facts if they are disclosed. Another element is that the facts, whether false or undisclosed, must be material to the acts of the defrauded party in the sense that the party would act differently if he knew the undisclosed facts or knew the true facts. Here the Probate Court knew that the bank was acting for purchasers allegedly friendly to the execu-

tors; the court was so informed through Walter Lytton's own petition for removal. Moreover we believe that the disclosure of the book value of Lytton's stock would not have altered the finding of the Probate Court. In ascertaining what price could be obtained in the market for the stock, book value is not necessarily determinative. In this case, despite the book value of $15, no better price than $8 was actually offered by anyone and an underwriting firm had indicated that the best price on the public market would only be $7.

The federal cases cited by the plaintiffs for the proposition that fiduciaries cannot have the benefit of a judgment obtained by their alleged concealment of facts are not applicable here. O'Boyle v. Bevil, 259 F2d 506 (CA 5th) and Griffith v. Bank of New York, 147 F2d 899 (CA 2d) were equity proceedings specifically brought to set aside prior judgments. The instant proceeding is not such a case; the plaintiffs here do not seek to enjoin the enforcement of the prior decrees or any other equitable relief from those judgments.

Because the issues already considered are dispositive of this appeal, it is not necessary to consider the other questions raised in the briefs. The Circuit Court was correct in dismissing the amended complaint. The order is therefore affirmed.

Order affirmed.

MURPHY, P. J. and KLUCZYNSKI, J., concur.