2024 IL App (1st) 230889-U

No. 1-23-0889

First Division
November 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

|  |  |  |
|---|---|---|
| G & E SCRAP PROCESSING COMPANY, LLC, a/k/a MAINE SCRAP METAL, LLC, and ELLIOTT G. KATZ and GENNA B. FRIEDMAN, as CO-TRUSTEES OF THE KATZ FAMILY TRUST, DATED JANUARY 2, 1996, | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
|  | ) | No. 2020 CH 6536 |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| HOWARD KATZ, | ) ) ) | Honorable Michael F. Otto, Judge, Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's grant of summary judgment on count I of the amended complaint in favor of defendant is affirmed where count I was barred by *res judicata*.

¶ 2    This appeal arises from an action instituted by plaintiffs-appellants G & E Scrap Processing Company, LLC, a/k/a Maine Scrap Metal, LLC, and Elliott G. Katz and Genna B. Friedman, as co-trustees of the Katz Family Trust, dated January 2, 1996 (the trust), against defendant-appellee Howard Katz, in his individual capacity, for damages in excess of $1,832,714, due to his breach of a promissory note with the trust. Plaintiffs now appeal from the circuit court of Cook County's grant of summary judgment as to count I of plaintiffs' amended complaint in favor of defendant, arguing that count I is not barred by *res judicata*. For the reasons that follow, we affirm.

¶ 3                            I. BACKGROUND

¶ 4                            A. The First Lawsuit

¶ 5    On January 9, 2020, Elliott and Genna filed a "Petition to Remove Howard Katz As Successor Trustee of the Katz Family Trust Dated January 2, 1996" in the circuit court of Cook County in *Elliott Katz and Genna B. Friedman v. Howard Katz*, No. 2020 CH 295 (hereinafter, "the first lawsuit").[1] Of note, the trust owned certain assets, including business assets and ownership of G & E Scrap Processing Company, LLC, also known as Maine Scrap Meal, LLC. The petition alleged that defendant, who was the sole trustee of the trust, borrowed large sums of money from the trust, evidenced by a promissory note attached to the petition, and that, as a debtor to the trust, defendant had a conflict of interest as trustee. The note became due on December 31, 2017. The petition requested the removal of defendant as trustee of the trust, appointment of Elliott as the sole successor trustee, defendant turn over all records, documents, and assets of the trust to Elliott, and for such other relief as the court deemed proper. Defendant was served but did not enter an appearance or respond to the petition.

_____

[1] None of the parties were identified in the caption or the petition as to what capacity they were appearing.

¶ 6    On October 15, 2020, the circuit court entered an order, granting Elliott and Genna's motion for a default judgment, removing defendant as trustee, and appointing Elliott and Genna as co-trustees of the trust. The order also stated that the case was dismissed with prejudice.

¶ 7    On October 26, 2020, defendant filed a motion to vacate the default judgment against him. On November 2, 2020, defendant filed a motion to stay the judgment in the first lawsuit and to reinstall him as the trustee.

¶ 8    On November 10, 2020, Elliott and Genna, as co-trustees of the trust, filed an "Emergency Motion to Remove Howard Katz As Trustee Of The Trust." Therein, they alleged that defendant failed to repay to the trust $1,832,714 owed under the promissory note, which came due on December 31, 2017. They also alleged against defendant multiple breaches of fiduciary duty.

¶ 9    On February 3, 2021, by agreement of the parties, defendant's motions were withdrawn. Nothing in that order or anywhere in the record reflects a ruling on Elliott and Genna's emergency motion.

¶ 10                          B. The Second Lawsuit

¶ 11    On October 29, 2020, Elliott and Genna, in their capacities as co-trustees of the trust and as its sole beneficiaries, filed a complaint against defendant for breach of the promissory note (hereinafter, "the second lawsuit"). On February 16, 2021, defendant filed a motion to dismiss plaintiffs' complaint, asserting, *inter alia*, that trust beneficiaries lack standing to sue a third party on behalf of the trust and thus Elliott and Genna as beneficiaries must be dismissed as plaintiffs. Plaintiffs filed a response, and defendant filed a reply. Following a substitution of judge, as well as a transfer from the chancery division to the law division, on March 2, 2022, the court dismissed Elliott and Genna in their capacity as beneficiaries of the trust as plaintiffs from the action based on lack of standing.

¶ 12    On March 28, 2022, Elliott and Genna filed an amended complaint, asserting four claims against defendant. This complaint identified the plaintiffs as: G & E Scrap Processing Company, LLC, also known as Maine Scrap Metal, LLC, and Elliott G. Katz and Genna B. Friedman, as the co-trustees of the trust (plaintiffs). Count I of the complaint, which is the sole issue in this appeal, alleges breach of written agreement, asserts that defendant failed to repay the promissory note at issue in the first lawsuit and seeks damages in the amount of $1,832,714, plus interest accruing daily.

¶ 13    On January 17, 2023, plaintiffs filed a motion for summary judgment as to count I of the amended complaint. On February 2, 2023, defendant filed a cross-motion for summary judgment, arguing, *inter alia*, that count I was barred by *res judicata*. On February 15, 2023, plaintiffs filed their response to defendant's cross-motion, arguing that neither the parties nor the causes of action in the second lawsuit were the same as those in the petition for removal. On March 8, 2023, defendant filed a reply.

¶ 14    On March 29, 2023, a hearing was held on defendant's cross-motion for summary judgment. On April 27, 2023, the court entered an order, finding that *res judicata* applied and granting defendant's cross-motion as to count I.

¶ 15    On April 28, 2023, the circuit court entered an order granting plaintiffs' oral motion to voluntarily dismiss the remaining claims in their amended complaint, which resulted in a final, appealable judgment.

¶ 16    This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, plaintiffs argue that the circuit court erred in dismissing count I of the amended complaint as barred by *res judicata*. In particular, plaintiffs assert that the circuit court erred in

finding an identity of cause of action and identity of the parties, and in the alternative, even were all the elements established, dismissal of count I was unjust and fundamental fairness requires that the doctrine not be applied here.

¶ 19    Summary judgment is appropriate " 'where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2020)). The party moving for summary judgment is not required to prove its case or disprove the nonmovant's case, but instead may be "entitled to summary judgment by demonstrating the absence of a genuine issue of material fact." *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). Our review of the court's decision granting summary judgment is *de novo*. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Here, the circuit court granted summary judgment in favor of defendant because count I of the amended complaint was barred by *res judicata*.

¶ 20    *Res judicata* is an equitable doctrine that "prevents the multiplicity of lawsuits between the same parties where the facts and issues are the same." *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 328 (2009). This doctrine "promotes judicial economy by preventing repetitive litigation and protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004). After a final judgment on the merits has been entered, "*res judicata* bars the same parties or their privies from relitigating

causes of action that were or could have been raised in the earlier lawsuit." *Turczak v. First American Bank*, 2013 IL App (1st) 121964, ¶ 22. The party invoking *res judicata* bears the burden of showing its applicability. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41. The three elements of *res judicata* are: "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of the parties or their privies." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 50. This court reviews *de novo* whether an action is barred by *res judicata*. *Lelis v. Board of Trustees of Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 13. There is no dispute in this case that a final judgment on the merits was entered in the first lawsuit, thus we confine our review to the remaining two elements.

¶ 21    Plaintiffs first assert that, under Illinois law, the removal of a trustee has no *res judicata* effect on other trust matters. According to plaintiffs, the first lawsuit was essentially a *quasi in rem* proceeding and the second lawsuit was *in personam* in nature, and *quasi in rem* proceedings have no *res judicata* effect.

¶ 22    The cases upon which plaintiffs rely for support are mortgage foreclosure cases, and this case clearly does not involve real estate. Additionally, plaintiffs have not directed us to any case stating that trustee removal actions are *quasi in rem* proceedings. Plaintiffs attempt to analogize mortgage foreclosure jurisprudence to actions against a trustee and effectively ask this court to create a new rule that would differentiate between removal of a trustee and other claims against a trustee. We decline this request, which is merely based on plaintiffs' own characterization of trustee removal actions with no supporting authority.

¶ 23    Nonetheless, plaintiffs assert that the Illinois Trust Code supports their *quasi in rem*/*in personam* distinction. In particular, they point to sections 706 and 707 of the Trust Code, which set forth the procedure for removal of a trustee. 760 ILCS 3/706, 707 (West 2020). Section 706

provides that a beneficiary may request the court to remove a trustee and sets forth the grounds for removal, and section 707 provides that a trustee that has been removed must expeditiously deliver the trust property to the new trustee. *Id.* According to plaintiffs, because a trustee that has been removed owes a continuing duty to account for trust assets, the Trust Code cannot require a new trustee to bring any and all actions against the former trustee in the same action as removal.

¶ 24 We can agree with plaintiffs that the Trust Code does not require that all claims be brought in the same action as removal, but with one exception. As defendant points out, the removal procedure set out in the Trust Code clearly contemplates that removal and other claims known about at the time can be brought in the same proceeding. In fact, section 706 expressly provides that "in lieu of or in addition to removing a trustee, the court may order such appropriate relief under subsection (b) of Section 1001 as may be necessary to protect the trust property or the interest of the beneficiaries." 760 ILCS 3/706(c). Section 1001 sets forth the remedies for breach of trust, which provides that the court may compel the trustee to perform its duties, enjoin the trustee from committing a breach of trust, suspend the trustee, remove the trustee, order a trustee to account, etc. 760 ILCS 3/1001. Subsection (c) also states that "[n]othing in this Section limits the equitable powers of the court to order other appropriate relief." 760 ILCS 3/1001(c). Neither this section nor any other section of the Trust Code indicates that removal actions must be brought separately; rather, section 1001 indicates the opposite, especially when read in conjunction with subsection (c) of section 706.

¶ 25 We recognize that nowhere does the Trust Code expressly state that removal and breach, or other claims for that matter, must be brought in the same action. That notwithstanding, as a matter of public policy, plaintiffs are not permitted to split their causes of action. *Rein v. David A. Noyes & Co*., 172 Ill. 2d 325, 340 (1996). The well-established rule against claim-splitting

"prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action." *Id.* We read nothing in the Trust Code that would exempt these proceedings from application of the rule. For claims that were not known to plaintiffs at the time of the removal of the trustee, section 1005 expressly provides that new breach of trust claims against trustees can be brought within 5 years after removal of the trustee. 760 ILCS 3/1005(b)(1). Accordingly, the Trust Code does not support plaintiffs' contention that removal is an *in rem* proceeding and <u>must be brought separately</u> from other claims against trustees.

¶ 26 Our conclusion is further supported by a case referenced in the circuit court's order: *Sauer v. SeDelle Jean Sauer Trust*, 2021 IL App (1st) 200489-U. In that case, the plaintiff, a beneficiary of the trust at issue, filed a complaint, which sought the removal of the defendant as trustee, damages for the defendant's alleged tortious interference with the plaintiff's expectancy, and the enforcement of a promissory note against the assets of the trust. *Id.* ¶ 2. Ultimately, the trial court granted summary judgment against the plaintiff on all counts of her complaint and this court affirmed, but not on the basis that the claims were not permitted to be brought together in the same action. *Id.* ¶¶ 36, 43, 46. This case demonstrates, irrespective of the outcome, that removal of a trustee and breach claims against that trustee have been brought in the same action.

¶ 27 This court's own research has revealed additional cases supporting the conclusion that removal of a trustee does not need to be sought in a standalone action. See *Daste v. Doris*, 2024 IL App (3d) 230082-U (beneficiaries of a trust filed a complaint against the trustee which included an action for accounting, breach of fiduciary duty, removal of trustee, and tortious interference with expectancy); *Gearheart v. Gearheart*, 2020 IL App (1st) 190042 (beneficiary's complaint alleged, *inter alia*, that the trustee breached his fiduciary duty and sought an accounting of

distributions made from the trust, restoration to the trust of any distributions in violation of its terms, preclusion of any further distributions, and removal of the trustee).

¶ 28 For these reasons, we reject plaintiffs' various arguments that removal of a trustee must be brought in a separate action from any other claims against the trustee.

¶ 29 Plaintiffs next assert that the second and third elements of *res judicata* were not established in this case.

¶ 30 For the second element, *i.e.* identity of cause of action, courts employ the "transactional test." *Tebbens v. Levin & Conde*, 2018 IL App (1st) 170777, ¶ 33. Under this test, "separate claims are considered the same cause of action *** where they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Id.* This determination should be made " 'pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 312 (1998) (quoting Restatement (Second) of Judgments § 24, at 196 (1982)).

¶ 31 Plaintiffs contend that the two lawsuits do not arise out of a single group of operative facts because the first lawsuit "did not implicate defenses to repayment of the promissory note; just the mere existence of the note and the conflict it created." We disagree. Here, the removal petition and the breach of promissory note claim clearly arose from the same single group of operative facts: defendant borrowed large sums of money from the trust as evidenced by a promissory note, the promissory note came due on December 31, 2017, defendant failed to repay his debt to the trust, defendant had a conflict of interest as trustee and debtor to the trust, and defendant owed the trust approximately $1,832,714, plus interest accruing daily. The facts underlying both the removal

petition and breach of promissory note claim are not complex and they were all known at the time of the first lawsuit. We also agree with defendant that his failure to repay was relevant to the first lawsuit because, if he had paid his debt under the promissory note, plaintiffs would have no basis for their allegation of a conflict of interest. As such, we fail to see any significant factual distinction between the two causes of action.

¶ 32     Plaintiffs set forth largely the same factual background to support the removal petition and the breach of promissory note claim: defendant owed large sums of money to the trust as of 2020 pursuant to the attached promissory note. See *Doe v. Gleicher*, 393 Ill. App. 3d 31, 38 (2009) (the plaintiffs conceded that the operative facts were the same by listing the same factual background to support their complaints). "If the same facts are essential to the maintenance of both proceedings or the same evidence is needed to sustain both, then there is identity between the allegedly different causes of action asserted and *res judicata* bars the latter action." *Morris v. Union Oil Co.*, 96 Ill. App. 3d 148, 157 (1981). That is precisely the circumstances we face here. Although the breach of promissory note claim was not raised in the removal lawsuit, it could have been where the same facts were necessary to support both claims. See *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294 (1992) ("[T]he judgment in the former suit is conclusive *** to all questions which might properly have been litigated and determined in that action."). The petition for removal and its attachments reflected all the facts necessary to bring a claim of breach of promissory note against defendant.

¶ 33     Lastly, we also agree with defendant's assertion that the allegation in the first lawsuit that defendant had a clear conflict as a debtor to the Trust "necessarily implicated defenses to liability on the [n]ote, which could have been presented as defenses to removal[.]" The doctrine applies to "every question relevant to and falling within the purview of the original action, in respect to

- 10 -

matters of both claim or grounds of recovery and defense." *Hughey v. Industrial Comm'n*, 76 Ill. 2d 577, 582 (1979). As defendant's potential defenses to both the removal petition and the breach of promissory note likely would have been the same, regardless of the default judgment, this is yet another basis for finding that both lawsuits stem from the same facts, despite seeking different types of relief. As such, we find that the facts of both actions are related in time, origin, and motivation, and thus, there can be no doubt that the second lawsuit arose out of the same common core of operative facts as the first lawsuit.

¶ 34    This court's decision in *Lytton v. Cole*, 54 Ill. App. 2d 161 (1964), which defendant cites for support, is instructive here. There, the beneficiaries of a testamentary trust brought an action against the defendants as executors of the estate and trustees of the trust, alleging breach of fiduciary duties. *Id.* at 162-63. Several years prior to the filing of the complaint, the probate court denied the beneficiaries' petition to remove the executors and later closed the estate, and no appeal was taken from its final orders. *Id.* at 169. Based on the prior order of the probate court, the defendants argued that the beneficiaries' claim was barred by *res judicata* and should be dismissed, and the trial court agreed. *Id.* This court affirmed the dismissal where the record showed that all the facts alleged in the breach of fiduciary duties complaint were adjudicated in the probate court in the removal petition. *Id.* at 174. Similarly, here, we conclude that *res judicata* applies as the removal petition asserted the same allegations as the breach of promissory note claim and therefore could have been brought and adjudicated in the first lawsuit.

¶ 35    Nonetheless, plaintiffs also contend that a new action or condition (removal of defendant as trustee and declaration of Elliott and Genna as co-trustees) established a new basis (co-trustees seeking to recover damages from defendant) for the second action. "When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties

respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action." *Northern Illinois Medical Center v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 144 (1985). However, we do not find that principle applicable in this case because the "new condition" was exactly the relief plaintiffs sought in the first lawsuit and thus was a foreseeable result of the removal petition. It seems disingenuous to claim that a new condition that plaintiffs undoubtedly anticipated established a new basis for the second lawsuit. Moreover, the new condition did not prevent them from adding the claim to their first lawsuit, as plaintiffs surely anticipated that they would next seek to recover damages from defendant pursuant to the unpaid promissory note. In fact, plaintiffs admitted in their brief on appeal and in their response to the summary judgment motion that they could have filed a motion to add their claim of breach of promissory note in the first lawsuit but they were not required to do so under the Trust Code. As we have already explained above, we do not find that the Trust Code supports their position. Therefore, plaintiffs have not set forth a plausible basis for this court to disregard their own concession that they could have amended their complaint.

¶ 36    For the foregoing reasons, we disagree with plaintiffs and find that there is an identity of cause of action in both lawsuits. We next examine whether there is an identity of the parties or their privies.

¶ 37    Plaintiffs assert that the second lawsuit involved different parties, where the parties were Elliott and Genna in their capacity as co-trustees and defendant in his individual capacity. In contrast, in the first lawsuit, according to plaintiffs, Elliott and Genna proceeded in their individual capacities and defendant in his capacity as trustee. According to plaintiffs, the parties are distinct from one another where trustees of a trust and beneficiaries of a trust "have different responsibilities and potentially different goals."

¶ 38 We first reject plaintiffs' contention that defendant was not named in his individual capacity in the first lawsuit. At no point does the petition for removal state that defendant is being sued in his capacity as trustee, and counsel entered his appearance "on behalf of Defendant, HOWARD KATZ." Additionally, the motions filed after the entry of default judgment stated that they were brought by defendant, with no notation as to his capacity as trustee. As such, we find that defendant was the same party in each lawsuit. We now turn to whether there was identity of the parties or their privies in both lawsuits.

¶ 39 Here, plaintiffs filed the petition in the first lawsuit in their capacity as the beneficiaries of the trust and they filed the complaint in the second lawsuit in their capacity as both the beneficiaries and the co-trustees of the trust. We agree with plaintiffs' contention that trustees are distinct from individuals. See *Hanley v. Kusper*, 61 Ill. 2d 452, 460 (1975) ("Trustees are not considered in law to be individuals."). However, the parties need not be identical for *res judicata* to apply; rather, the parties need only be in privity. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 40 "[P]arties who adequately represent the same legal interests are in privity." *Altair Corp. v. Grand Premier Trust & Investment, Inc.*, 318 Ill. App. 3d 57, 62 (2000). "A privy to a judgment or decree is one whose succession to the rights of property thereby affected occurred after institution of the particular suit, and from a party thereto." *Schafer v. Robillard*, 370 Ill. 92, 100 (1938). A nonparty may be bound by privity "if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010) (quoting *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 563 (2005)).

¶ 41 As the circuit court noted below, Elliott and Genna have the same interests and goals as co-trustees as they do as beneficiaries: "maximizing trust assets for the benefit of the trust

beneficiaries." We agree with this observation. It is clear that, under these circumstances, beneficiaries and co-trustees would both seek to collect on the promissory note and remove a trustee who had a conflict of interest pursuant to an overdue promissory note to the trust. We recognize that there may be circumstances where trustees and beneficiaries will not have the same interests and goals, but our analysis only considers the circumstances in the case before us. As such, we also reject plaintiffs' baseless argument that courts should not determine *res judicata* on a case-by-case basis; rather, that is precisely what we should do and have done here. See *Agolf, LLC v. Village of Arlington Heights*, 409 Ill. App. 3d 211, 220 (2011) ("A determination regarding whether privity exists is to be conducted on a case-by-case basis."). Because Elliott and Genna as beneficiaries and co-trustees had the same interests and goals, we find that the parties were bound by privity by the litigation in the first lawsuit.

¶ 42    Nonetheless, plaintiffs argue that the fact that Elliott and Genna were dismissed from the second lawsuit as beneficiaries of the trust for lack of standing demonstrates that there is not an identity of the parties and they could not have pursued a breach of promissory note claim against defendant in the first lawsuit where they were acting as individuals. Plaintiffs' assertion is belied by the record, which shows that, after the default judgment was entered in the first lawsuit, Elliott and Genna, in their capacity as both beneficiaries and co-trustees, filed an emergency motion on the breach of promissory note claim. Additionally, plaintiffs have admitted that they could have amended their complaint and added Elliott and Genna in their capacities as co-trustees. Plaintiffs contend that their emergency motion was not an official amendment of the parties. Although we agree with that statement, the emergency motion nonetheless signals that plaintiffs were aware that they could bring the breach of promissory note claim had they added Elliott and Genna as co-

trustees in the first lawsuit. The fact that plaintiffs did not do so does not render the doctrine of *res judicata* inapplicable.

¶ 43    For the foregoing reasons, we conclude that plaintiffs in the second lawsuit are bound by privity with Elliott and Genna in their capacity as beneficiaries in the first lawsuit.

¶ 44    Finally, plaintiffs argue that, as a matter of fundamental fairness and equity, the doctrine of *res judicata* should not be applied to count I of their amended complaint. Even if *res judicata* is applicable, a court will not apply it where fundamental fairness so requires. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001). Where a *prima facie* case for *res judicata* has been established, it is plaintiffs' burden to establish the injustice that would result. *Tebbens*, 2018 IL App (1st) 170777, ¶ 41.

¶ 45    Plaintiffs contend that, because there is no Illinois case holding that all causes of action must be brought against a trustee in the same proceeding where the trustee's removal is sought, this court should find it inequitable to apply *res judicata* to them under these circumstances. This argument is not well-taken. Although there may have been no case mandating such, similarly there was no case stating that removal of a trustee and other claims against that trustee *cannot* be brought in the same action. In fact, as we have discussed above, the Trust Code suggests that these claims certainly can be brought in the same action, and we have cited cases where multiple claims including removal were included together in a complaint. Parties should always be wary of splitting their causes of action into multiple lawsuits lest the doctrine of *res judicata* apply to bar their subsequent lawsuits. Plaintiffs' disregard of the rule against claim-splitting and its underlying policies does not protect them from the doctrine, especially where they admit that they could have amended their complaint in the first lawsuit to assert a claim of breach of promissory note and to enter the lawsuit as co-trustees. See *Doe*, 393 Ill. App. 3d at 39 ("There is nothing fundamentally

unfair in requiring [the] plaintiffs to amend their complaint to include allegations which came to light *** before they terminated litigation.").

¶ 46    Plaintiffs also contend that application of *res judicata* under these circumstances would create an inflexible rule requiring incoming trustees to bring all lawsuits against the outgoing trustee in the same lawsuit as the removal of the trustee or risk forfeiting those claims forever. However, that would not be the consequence of our conclusion here. If an incoming trustee is not aware of the existence of the facts necessary to bring certain causes of action at the time of removal, then there would be no *res judicata* effect on any new actions, for it is only applicable where the claim *could have* been brought in the prior lawsuit. An incoming trustee could not bring claims of which he or she had no knowledge. Conversely, here, Elliott and Genna, as the incoming trustees, were well aware of the claim against defendant for breach of promissory note at the time of judgment.

¶ 47    The application of *res judicata* undoubtedly causes a party to lose the opportunity to litigate a claim, but plaintiffs fail to present to this court any unique or compelling reason why their mistake should not be held against them here. Thus, we decline relaxation of the doctrine's application here, and we conclude that circuit court correctly held that *res judicata* barred count I of plaintiffs' amended complaint.[2]

¶ 48                                III. CONCLUSION

¶ 49    For the reasons stated, we affirm the judgment of the circuit court.

¶ 50    Affirmed.

---

[2] Although the trial court ruled  that dismissal of this proceeding was not based on collateral estoppel, plaintiffs have nonetheless included discussion of the doctrine it their opening brief. As we find discussion of the doctrine unnecessary to our disposition, we have no reason to address it here.